# No. 14-1239

## United States Court Of Appeals

### FOR THE SECOND CIRCUIT

**ZHUOSHI ZHOU, on behalf of himself and others similarly situated,**

*Plaintiff-Appellee,*

**against**

**LAN SHENG RESTAURANT INC. d/b/a**

**LAN SHENG SZECHUAN RESTAURANT,**

**BIN SHENG YAN and LAM YAN,**

*Defendants-Appellants,*

**JOHN DOE and JANE DOE,**

**Defendants.**

**Appeal from Order and Judgment of Hon. Jesse M. Furman US District Court, Southern District of New York Docket No. 13CIV4135**

### APPENDIX OF DEFENDANTS-APPELLANTS

**KEVIN KERVENG TUNG, P.C.**
**136-20 38th Avenue, Suite 3D**
**Flushing, New York 11354**
**(718) 939 4633**
**Attorneys for Defendants-Appellants**

**Of Counsel: Kevin K. Tung**

# TABLE OF CONTENTS

**Page**

Southern District Docket Sheet.............................................................................1a

Defendants' Notice of Appeal Dated April 11, 2014 .......................................10a

Decision, Order and Judgment Appealed From Of The Honorable Jesse M. Furman
Dated March 21 and 27, 2014...........................................................................11a

Trial Oral Decision Transcript Dated March 21, 2014 ....................................15a

Trial Transcript Excerpts Dated March 17, 2014, Pages 53-56.......................65a

Trial Transcript Excerpts Dated March 17, 2014, Pages 74-76………………………..69a

Trial Transcript Excerpts Dated March 18, 2014, Pages 121-125...................72a

Trial Transcript Excerpts Dated March 18, 2014, Page 152............................77a

Trial Transcript Excerpts Dated March 18, 2014, Pages 212-213...................78a

Defendants' Exhibit S: Posted Minimum Wage Law Notice………………..……...80a

CLOSED,APPEAL,CASREF,ECF

# U.S. District Court
## Southern District of New York (Foley Square)
## CIVIL DOCKET FOR CASE #: 1:13-cv-04135-JMF

Zhou v. Lan Sheng Restaurant Inc. et al                    Date Filed: 06/14/2013
Assigned to: Judge Jesse M. Furman                         Date Terminated: 03/27/2014
Referred to: Magistrate Judge Gabriel W. Gorenstein (Settlement)    Jury Demand: Both
Cause: 29:206 Collect Unpaid Wages                         Nature of Suit: 710 Labor: Fair Standards
                                                           Jurisdiction: Federal Question

## Plaintiff

**Zhuoshi Zhou**                        represented by    **Benjamin B. Xue**
*On behalf of himself and others similarly*             Xue & Associates, P.C.
*situated*                                              401 Broadway, Suite 1009
                                                        New York, NY 10013
                                                        (212)-219-2275
                                                        Fax: (212)-219-2276
                                                        Email: bbxlaw@gmail.com
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Hsien Chih Kung**
                                                        Xue & Associates, P.C.
                                                        401 Broadway
                                                        New York, NY 10013
                                                        (848) 228-6544
                                                        Fax: (212) 219-2276
                                                        Email: thomaskung@xuelaw.com
                                                        *ATTORNEY TO BE NOTICED*

V.

## Defendant

**Lan Sheng Restaurant Inc.**          represented by    **Kenji Fukuda**
*doing business as*                                      Kevin Kerveng Tung, P.C.
Lan Sheng Szechuan Restaurant                           38-21 Main Street
                                                        Flushing, NY 11354
                                                        (718)-939-4633
                                                        Fax: (718)-939-4468
                                                        Email: kfukuda@kktlawfirm.com
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

Ming Hai
Law Office of Ming Hai
36-09 Main Street, Ste. 7B
Flushing, NY 11354
718 445 9111
Fax: 718 445 5424
Email: lawminghai@yahoo.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Bin Sheng Yan**                    represented by    **Kenji Fukuda**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Lam Yan**                          represented by    **Kenji Fukuda**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**John Doe**

**Defendant**

**Jane Doe**

| Date Filed | # | Docket Text |
|---|---|---|
| 06/14/2013 | 1 | COMPLAINT against Jane Doe, John Doe, Lan Sheng Restaurant Inc., Bin Sheng Yan, Lam Yan. (Filing Fee $ 350.00, Receipt Number 465401069811)Document filed by Zhuoshi Zhou.(jd) (jd). (Entered: 06/19/2013) |
| 06/14/2013 | | SUMMONS ISSUED as to Jane Doe, John Doe, Lan Sheng Restaurant Inc., Bin Sheng Yan, Lam Yan. (jd) (Entered: 06/19/2013) |
| 06/14/2013 | | Magistrate Judge Gabriel W. Gorenstein is so designated. (jd) (Entered: 06/19/2013) |
| 06/14/2013 | | Case Designated ECF. (jd) (Entered: 06/19/2013) |
| 06/19/2013 | | **\*\*\*NOTE TO ATTORNEY TO E-MAIL PDF. Note to Attorney Benjamin B. Xue for noncompliance with Section 14.3 of the S.D.N.Y. Electronic Case Filing Rules & Instructions. E-MAIL the PDF for Document 1 Complaint to: caseopenings@nysd.uscourts.gov.** (jd) (Entered: 06/19/2013) |

Case: 14-1239　　Document: 40　　Page: 5　　05/19/2014　　1299244　　84

3a

| 07/12/2013 | 2 | NOTICE OF INITIAL PRETRIAL CONFERENCE: Initial Conference set for 9/24/2013 at 04:15 PM in Courtroom 1105, 40 Centre Street, New York, NY 10007 before Judge Jesse M. Furman as further set forth in this order. (Signed by Judge Jesse M. Furman on 7/12/2013) (lmb) (Entered: 07/12/2013) |
|---|---|---|
| 07/23/2013 | 3 | ANSWER to 1 Complaint with JURY DEMAND. Document filed by Lan Sheng Restaurant Inc.. (Attachments: # 1 Affidavit of Service)(Hai, Ming) (Entered: 07/23/2013) |
| 07/23/2013 | 4 | RULE 7.1 CORPORATE DISCLOSURE STATEMENT. No Corporate Parent. Document filed by Lan Sheng Restaurant Inc..(Hai, Ming) (Entered: 07/23/2013) |
| 09/10/2013 | 5 | RULE 26 DISCLOSURE.Document filed by Lan Sheng Restaurant Inc..(Hai, Ming) (Entered: 09/10/2013) |
| 09/24/2013 | 6 | CIVIL CASE MANAGEMENT PLAN AND SCHEDULING ORDER: All parties do not consent to conducting all further proceedings before a United States Magistrate Judge, including motions and trial. 28 U.S.C. section 636(c). All Fact Discovery due by 12/20/2013. This case is to be tried to a jury. Counsel for the parties have conferred, and the present best estimate of the length of trial is 3 days. Plaintiff shall file a motion for preliminary certification of a collective action no later than October 31. Any opposition is due weeks after th filing of the motion. Any reply is due 1 week after the filing of the opposition. At the time any reply is due, the moving party shall supply one courtesy hard copy of all motion papers by mail or hand deliver to the court. The parties shall confer in advance of filing the motion. The parties must contact the chambers of the Magistrate Judge designated to this case on on before September 26, 20913 in order to schedule settlement discussions under his/her supervision in or about October 2013. Pretrial Conference set for 12/20/2013 at 11:00 AM in Courtroom 1105, 40 Centre Street, New York, NY 10007 before Judge Jesse M. Furman. (Signed by Judge Jesse M. Furman on 9/24/2013) (djc) Modified on 9/25/2013 (djc). (Entered: 09/25/2013) |
| 09/24/2013 | | Set/Reset Deadlines: Motions due by 10/31/2013. (djc) (Entered: 09/25/2013) |
| 09/24/2013 | 7 | ORDER OF REFERENCE TO A MAGISTRATE JUDGE: Order that case be referred to the Clerk of Court for assignment to a Magistrate Judge for Settlement. Referred to Magistrate Judge Gabriel W. Gorenstein. (Signed by Judge Jesse M. Furman on 9/24/2013) (js) (Entered: 09/26/2013) |
| 09/24/2013 | | Minute Entry for proceedings held before Judge Jesse M. Furman: Initial Pretrial Conference held on 9/24/2013. Benjamin Xue present for the Plaintiff. Ming Hai present for the Defendants. (ab) (Entered: 10/01/2013) |
| 09/27/2013 | 8 | ORDER SCHEDULING SETTLEMENT CONFERENCE: A settlement conference in this matter is scheduled for October 25, 2013, at 2:30 p.m. in Courtroom 6-B, United States Courthouse, 500 Pearl Street, New York, New York. All persons attending the conference should arrive early to allow for the time required to pass through the security clearance process. The parties should also note that paragraph 3 of the Standing Order requires certain written submissions, which must be received by the Court and all other |

4a

| | | parties no later than midnight four business days before the conference: that is, October 21, 2013. (Settlement Conference set for 10/25/2013 at 02:30 PM in Courtroom 6B, 500 Pearl Street, New York, NY 10007 before Magistrate Judge Gabriel W. Gorenstein.) (Signed by Magistrate Judge Gabriel W. Gorenstein on 9/27/2013) (rsh) (Entered: 09/27/2013) |
|---|---|---|
| 10/21/2013 | 9 | REVISED SCHEDULING ORDER: IT IS HEREBY ORDERED that the conference in this matter, previously scheduled for Friday, December 20, 2013 at 11:00 am, is RESCHEDULED for Thursday, December 19, 2013 at 4:00 pm in Courtroom 1105 of the Thurgood Marshall Courthouse, 40 Centre Street, New York, New York. Pretrial Conference set for 12/19/2013 at 04:00 PM in Courtroom 1105, 40 Centre Street, New York, NY 10007 before Judge Jesse M. Furman. (Signed by Judge Jesse M. Furman on 10/21/2013) (lmb) (Entered: 10/21/2013) |
| 10/25/2013 | | Minute Entry for proceedings held before Magistrate Judge Gabriel W. Gorenstein: Settlement Conference held on 10/25/2013. (sc) (Entered: 10/28/2013) |
| 10/30/2013 | 10 | LETTER addressed to Judge Jesse M. Furman from Thomas Hsien Chih Kung dated 10/30/2013 re: Defendant's Failure to Comply with Scheduling Order. Document filed by Zhuoshi Zhou.(Kung, Hsien) (Entered: 10/30/2013) |
| 10/30/2013 | 11 | LETTER addressed to Judge Jesse M. Furman from Ming Hai dated 10/30/2013 re: Response to plaintiff's letter dated 10/30/2013. Document filed by Lan Sheng Restaurant Inc..(Hai, Ming) (Entered: 10/30/2013) |
| 10/30/2013 | 12 | MEMO ENDORSEMENT on re: 10 Letter filed by Zhuoshi Zhou. ENDORSEMENT: Application DENIED without prejudice to renewal after the parties have met and conferred as required by the Case Management Plan and this Court's Individual Rules and Practices for Civil Cases. Counsel is reminded that, as of September 3, 2013, this sort of application must be made by letter-motion filed on ECF. Counsel should consult this Court's Individual Practices and the S.D.N.Y. ECF Rules and Instructions for further information and guidance. (Signed by Judge Jesse M. Furman on 10/30/2013) (lmb) (Entered: 10/31/2013) |
| 11/07/2013 | 13 | NOTICE OF APPEARANCE by Kenji Fukuda on behalf of Lan Sheng Restaurant Inc., Bin Sheng Yan, Lam Yan. (Attachments: # 1 Exhibit)(Fukuda, Kenji) (Entered: 11/07/2013) |
| 12/13/2013 | 14 | REVISED SCHEDULING ORDER: IT IS HEREBY ORDERED that the conference in this matter, previously scheduled for Thursday, December 19, 2013 at 4:00 pm, is RESCHEDULED for Wednesday, December 18, 2013 at 3:45 pm in Courtroom 1105 of the Thurgood Marshall Courthouse, 40 Centre Street, New York, New York. Pretrial Conference set for 12/18/2013 at 03:45 PM in Courtroom 1105, 40 Centre Street, New York, NY 10007 before Judge Jesse M. Furman. (Signed by Judge Jesse M. Furman on 12/13/2013) (lmb) (Entered: 12/13/2013) |
| 12/16/2013 | 15 | REVISED SCHEDULING ORDER: IT IS HEREBY ORDERED that the conference in this matter, previously scheduled for Wednesday, December 18, 2013 at 3:45 pm, is |

| | | |
|---|---|---|
| | | RESCHEDULED for the same date at 10:30 am in Courtroom 1105 of the Thurgood Marshall Courthouse, 40 Centre Street, New York, New York.SO ORDERED. Pretrial Conference set for 12/18/2013 at 10:30 AM in Courtroom 1105, 40 Centre Street, New York, NY 10007 before Judge Jesse M. Furman. (Signed by Judge Jesse M. Furman on 12/16/2013) (ama) (Entered: 12/16/2013) |
| 12/18/2013 | 16 | ORDER: Discovery due by 12/20/2013, with the following two exceptions: plaintiff's deposition due by 1/10/2014, and Defendants must disclose any relevant computer data or records requested by Plaintiff by 1/10/2014. Joint Pretrial Order due by 1/31/2014. Ready for Trial by 2/24/2014. The following procedures shall govern the conduct of the hearing: a. All exhibits must be pre-marked. b. At the start of the hearing, each party shall provide the Court with three (3) copies of a complete exhibit list. c. Counsel should make certain that they retain custody of all original exhibits, including the affidavits composing the direct testimony. The Court does not retain them and the Clerk is not responsible for them. (Signed by Judge Jesse M. Furman on 12/18/2013) (tn) (Entered: 12/18/2013) |
| 12/18/2013 | | Minute Entry for proceedings held before Judge Jesse M. Furman: Pretrial Conference held on 12/18/2013. Hsien Kung present for the Plaintiff. Kenji Fukuda present for the Defendants. (ab) (Entered: 01/08/2014) |
| 01/13/2014 | 17 | LETTER MOTION for Extension of Time *to adjourn trial date* addressed to Judge Jesse M. Furman from Kenji Fukuda dated 01/13/2014. Document filed by Lan Sheng Restaurant Inc., Bin Sheng Yan, Lam Yan.(Fukuda, Kenji) (Entered: 01/13/2014) |
| 01/13/2014 | 18 | ORDER denying 17 Letter Motion for Extension of Time. Application DENIED without prejudice to renewal after the Court sets an actual trial date. February 24th is merely a trial ready date; it is not the trial date itself. The Court will schedule a trial date and final pretrial conference after the parties have filed their joint pretrial order and related filings, which are due no later than January 31, 2014. Counsel is reminded that, as of September 13, 2013, letters of this sort must be filed on ECF. Counsel should consult the Court's Individual Rules and Practices and the SDNY ECF Rules and Instructions for further guidance. (Signed by Judge Jesse M. Furman on 1/13/2014) (lmb) (Entered: 01/13/2014) |
| 01/27/2014 | 19 | LETTER MOTION for Local Rule 37.2 Conference addressed to Judge Jesse M. Furman from Thomas Hsien Chih Kung dated 1/24/2014. Document filed by Zhuoshi Zhou. (Attachments: # 1 Exhibit)(Kung, Hsien) (Entered: 01/27/2014) |
| 01/27/2014 | 20 | LETTER RESPONSE in Opposition to Motion addressed to Judge Jesse M. Furman from Kenji Fukuda dated 01/27/2014 re: 19 LETTER MOTION for Local Rule 37.2 Conference addressed to Judge Jesse M. Furman from Thomas Hsien Chih Kung dated 1/24/2014.. Document filed by Lan Sheng Restaurant Inc., Bin Sheng Yan, Lam Yan. (Attachments: # 1 Exhibit)(Fukuda, Kenji) (Entered: 01/27/2014) |
| 01/28/2014 | 21 | ORDER with respect to 19 Letter Motion for Local Rule 37.2 Conference. There is no need for a conference. Discovery in this case ended on December 20, 2013, except for the two limited forms of discovery that were permitted after that date; and it ended altogether on January 10, 2014. Discovery means discovery. It does not mean party |

Case: 14-1239　　Document: 40　　Page: 8　　08/19/2014　　1299244　　84

| | | discovery, with non-party discovery to continue up to and through the date of trial. And Defendants have not shown good cause that would justify an extension of the discovery deadline. Accordingly, Defendants are ORDERED to withdraw the subpoena at issue, and may not offer any evidence at trial obtained pursuant to the subpoena. All other dates and deadlines, including the January 31, 2014 deadline for submission of the Joint Pretrial Order and related filings, remain in effect. (HEREBY ORDERED by Judge Jesse M. Furman)(Text Only Order) (Furman, Jesse) (Entered: 01/28/2014) |
|---|---|---|
| 01/30/2014 | 22 | LETTER MOTION for Extension of Time to File *Pretrial Submissions* addressed to Judge Jesse M. Furman from Thomas Hsien Chih Kung dated 1/30/2014. Document filed by Zhuoshi Zhou. (Attachments: # 1 Text of Proposed Order)(Kung, Hsien) (Entered: 01/30/2014) |
| 01/30/2014 | 23 | ORDER denying 22 Letter Motion for Extension of Time to File joint pretrial order and related filings. Per the Court's Rules, applications for extensions of time must be received at least 48 hours in advance of the relevant deadline. Counsel provides no explanation for the late request in this instance, especially insofar as one of the proffered bases for the request is the Chinese New Year, an event scheduled long before today. (HEREBY ORDERED by Judge Jesse M. Furman)(Text Only Order) (Furman, Jesse) (Entered: 01/30/2014) |
| 01/31/2014 | 24 | PRETRIAL MEMORANDUM. Document filed by Lan Sheng Restaurant Inc., Bin Sheng Yan, Lam Yan.(Fukuda, Kenji) (Entered: 01/31/2014) |
| 01/31/2014 | 25 | JOINT PRELIMINARY TRIAL REPORT. Document filed by Zhuoshi Zhou. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(Kung, Hsien) (Entered: 01/31/2014) |
| 01/31/2014 | 26 | PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW. Document filed by Zhuoshi Zhou.(Kung, Hsien) (Entered: 01/31/2014) |
| 01/31/2014 | 27 | PRETRIAL MEMORANDUM. Document filed by Zhuoshi Zhou.(Kung, Hsien) (Entered: 01/31/2014) |
| 02/04/2014 | 28 | ORDER: 1. The final pretrial conference in this case is scheduled for February 26, 2014, at 2:00 pm, in Courtroom 1105 of the Thurgood Marshall Courthouse, 40 Centre Street, New York, New York. 2. It is ORDERED that the trial will begin at 9:00am on March 3, 2014. The trial will be conducted from 9:00 a.m. until 2:30 p.m. each day, with one and only one half hour break. 3. It is further ORDERED that the following procedures shall govern the conduct of the trial: a. All exhibits must be pre-marked. b. At the start of the trial, each party shall provide the Court with three (3) copies of a complete exhibit list. c. Counsel should make certain that they retain custody of all original exhibits, including the affidavits composing the direct testimony. The Court does not retain them and the Clerk is not responsible for them., ( Final Pretrial Conference set for 2/26/2014 at 02:00 PM in Courtroom 1105, 40 Centre Street, New York, NY 10007 before Judge Jesse M. Furman., Jury Trial set for 3/3/2014 at 09:00 AM before Judge Jesse M. Furman.) (Signed by Judge Jesse M. Furman on 2/4/2014) (lmb) (Entered: 02/04/2014) |
| 02/04/2014 | 29 | LETTER MOTION for Extension of Time addressed to Judge Jesse M. Furman from |

| | | |
|---|---|---|
| | | Kenji Fukuda dated 02/04/2014. Document filed by Lan Sheng Restaurant Inc., Bin Sheng Yan, Lam Yan.(Fukuda, Kenji) (Entered: 02/04/2014) |
| 02/05/2014 | 30 | ORDER granting 29 Letter Motion for Adjournment. The Trial will begin on March 17, 2014, at 9:15 a.m. The final pretrial conference is RESCHEDULED for March 11, 2014, at 3 p.m. There is no need to submit a revised Joint Pretrial Order. (HEREBY ORDERED by Judge Jesse M. Furman)(Text Only Order) (Furman, Jesse) (Entered: 02/05/2014) |
| 02/05/2014 | 31 | PRETRIAL MEMORANDUM. Document filed by Lan Sheng Restaurant Inc., Bin Sheng Yan, Lam Yan.(Fukuda, Kenji) (Entered: 02/05/2014) |
| 02/07/2014 | 32 | REPLY MEMORANDUM OF LAW re: 24 Pretrial Memorandum. Document filed by Zhuoshi Zhou. (Kung, Hsien) (Entered: 02/07/2014) |
| 03/11/2014 | | Minute Entry for proceedings held before Judge Jesse M. Furman: Final Pretrial Conference held on 3/11/2014. Hsien Chih Kung present for the Plaintiff. Kenji Fukuda present for the Defendants. Court reporter present. (ab) (Entered: 03/17/2014) |
| 03/12/2014 | 33 | LETTER addressed to Judge Jesse M. Furman from Kenji Fukuda dated 3/11/2014 re: The defendants' will produce witnesses in the following order: 1. Lan Yang; 2. Bin Sheng Yan; 3. Zemin Zhou; 4. Zhen Hua Tang; 5. Zi Xiang He; and 6. Lobsing Gyaltsen. (ajs) (Entered: 03/12/2014) |
| 03/17/2014 | 34 | JOINT PRETRIAL ORDER: Having conferred among themselves and with the Court pursuant to Rule 16 of the Federal Rules of Civil Procedure, the parties adopt the following statements, directions and agreements as the Joint Pretrial Order. This Court has subject matter jurisdiction over Plaintiff's federal claims pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201 et seq., 29 U.S.C. §201, and 28 U.S.C. §§ 1331 and 1337. Defendant Lan Sheng Restaurant Inc. has been an enterprise engaged in commerce within the meaning of the FLSA in that it (i) has had employees engaged in commerce or in the production of goods for commerce, or who handle, sell, or otherwise work on goods or materials that have been moved in or produced for commerce by any person; and (ii) has had an annual gross volume of sales of not less than $500,000.00. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367. The Parties estimate the length of trial to be three days. Parties consent to a bench trial. The parties do not consent to proceed before a Magistrate; as further set forth herein. (Signed by Judge Jesse M. Furman on 3/17/2014) (mro) (Entered: 03/17/2014) |
| 03/17/2014 | | Minute Entry for proceedings held before Judge Jesse M. Furman: Bench Trial begun on 3/17/2014. Hsien Chih Kung and Mathew Yogg (Law Clerk) present for the Plaintiff. Kevin Kerreng Tung and Huan-Chi Huang (Law Clerk) present for the Defendants. Court reporter present. -- Bench trial begun. (See transcript.) Continued to Tuesday, March 18, 2014. (ab) (Entered: 03/18/2014) |
| 03/18/2014 | | Minute Entry for proceedings held before Judge Jesse M. Furman: Bench Trial held on 3/18/2014. Hsien Chih Kung and Mathew Yogg (Law Clerk) present for the Plaintiff. Kevin Kerreng Tung and Huan-Chi Huang (Law Clerk) present for the Defendants. |

| | | Court reporter present. -- Closing statements scheduled for Friday, March 21, 2014 at 1:30 pm. (ab) (Entered: 03/19/2014) |
|---|---|---|
| 03/21/2014 | 35 | ORDER: As stated in the Court's Oral Opinion read into the record on March 21, 2014, the following tables summarize the Court's findings and conclusions with respect to Plaintiff's hours, wages, and damages in this case; as set forth herein. For the reasons stated on the record in the Court's Oral Opinion, the Clerk of Court is directed to enter judgment in Plaintiff's favor against all Defendants in the amount of $134,704.79 and to close the case. The Court will retain jurisdiction to adjudicate any dispute over attorney's fees and costs. As stated on the record, the parties shall confer in person with respect to the amount of fees and costs that Plaintiff is entitled to, with the hope that they can agree or at least narrow any disputes. In the absence of agreement, Plaintiff shall file any application for such fees, with supporting documentation, by April 21, 2014. Any opposition to that application shall be filed by May 5, 2014, and any reply shall be filed by May 12, 2014. Counsel are encouraged to review the Court's opinions in Wolinsky v. Scholastic, Inc., 900 F. Supp. 2d 332 (S.D.N.Y. 2012), Pla v. Renaissance Equity Holdings, 2014 WL 113721 (S.D.N.Y. 2014) and Cisneros v. Schnipper Restaurant, 2014 WL 67235 (S.D.N.Y. 2014), which provide some guidance on what constitutes reasonable attorneys fees in this context. ( Motions due by 4/21/2014., Responses due by 5/5/2014, Replies due by 5/12/2014.) (Signed by Judge Jesse M. Furman on 3/21/2014) (mro) (Entered: 03/21/2014) |
| 03/21/2014 | | Transmission to Judgments and Orders Clerk. Transmitted re: 35 Order, Set Deadlines, to the Judgments and Orders Clerk. (mro) (Entered: 03/21/2014) |
| 03/21/2014 | | Minute Entry for proceedings held before Judge Jesse M. Furman: Bench Trial completed on 3/21/2014. Hsien Chih Kung present for the Plaintiff. Kevin Kerreng Tung and Huan-Chi Huang (Law Clerk) present for the Defendants. Court reporter present. -- See transcript. The Court is directed to enter judgment in Plaintiff's favor against all Defendants. (ab) (Entered: 04/01/2014) |
| 03/21/2014 | | BENCH TRIAL DECISION. (ab) (Entered: 04/01/2014) |
| 03/27/2014 | 36 | CLERK'S JUDGMENT: That for the reasons stated in the Court's Order dated March 21, 2014, judgment is entered in Plaintiff's favor against all Defendants in the amount of $134,704.79; the Court will retain jurisdiction to adjudicate any dispute over attorney's fees and costs; accordingly, the case is closed. (Signed by Clerk of Court Ruby Krajick on 3/27/2014) (Attachments: # 1 Notice of Right to Appeal)(dt) (Entered: 03/27/2014) |
| 04/11/2014 | 37 | NOTICE OF APPEAL from 36 Clerk's Judgment, 35 Order, Set Deadlines,,,,,,,,,,,,,. Document filed by Lan Sheng Restaurant Inc., Bin Sheng Yan, Lam Yan. Filing fee $ 505.00, receipt number 0208-9558603. Form C and Form D are due within 14 days to the Court of Appeals, Second Circuit. (Fukuda, Kenji) (Entered: 04/11/2014) |
| 04/11/2014 | | Transmission of Notice of Appeal and Certified Copy of Docket Sheet to US Court of Appeals re: 37 Notice of Appeal,. (nd) (Entered: 04/11/2014) |
| 04/11/2014 | | Appeal Record Sent to USCA (Electronic File). Certified Indexed record on Appeal |

| | | Electronic Files for 37 Notice of Appeal, filed by Lam Yan, Lan Sheng Restaurant Inc., Bin Sheng Yan were transmitted to the U.S. Court of Appeals. (nd) (Entered: 04/11/2014) |
|---|---|---|
| 04/21/2014 | 38 | MOTION for Attorney Fees. Document filed by Zhuoshi Zhou.(Kung, Hsien) (Entered: 04/21/2014) |
| 04/21/2014 | 39 | DECLARATION of Thomas Hsien Chih Kung in Support re: 38 MOTION for Attorney Fees.. Document filed by Zhuoshi Zhou. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H) (Kung, Hsien) (Entered: 04/21/2014) |
| 05/09/2014 | 40 | ORDER granting 38 Motion for Attorney Fees. Following a bench trial in this matter brought under the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq., and New York Labor Law, N.Y. Lab. Law §§ 650 et seq., the Court entered judgment in Plaintiff's favor in the amount of $134,704.79, and retained jurisdiction to adjudicate any dispute over attorney's fees and costs. (Docket No. 35). On April 21, 2014, Plaintiff filed a motion seeking $66,576.08 in attorney's fees and costs. (Docket No. 38). The deadline for opposing this motion has passed, and Defendants have filed no opposition. In addition, Defendants indicated in an e-mail to Plaintiff that they did not oppose the application. (See Docket No. 39-8). In light of these facts, and having reviewed Plaintiff's submissions (see Docket No. 39), the Court concludes that Plaintiff's request is reasonable. See 29 U.S.C. § 216(b); N.Y. Lab. Law § 663(1); see also Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany, 522 F.3d 182, 188-90 (2d Cir. 2008). Accordingly, Plaintiff's motion for attorney's fees and costs is GRANTED, and Defendants are ordered to remit $66,576.08 to Plaintiff. The Clerk of the Court is directed to terminate Docket No. 38. (Signed by Judge Jesse M. Furman on 5/9/2014) (mro) (Entered: 05/09/2014) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 07/28/2014 16:56:44 | | |
| **PACER Login:** | kk1853 | **Client Code:** | Lan Sheng Restaurant |
| **Description:** | Docket Report | **Search Criteria:** | 1:13-cv-04135-JMF |
| **Billable Pages:** | 7 | **Cost:** | 0.70 |

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
ZHUOSHI ZHOU on behalf of himself and others
similarly situated,

                 CIVIL ACTION NO.: 13CIV4135

        Plaintiff,

    -against-

                 **NOTICE OF APPEAL**

LAN SHENG RESTAURANT INC. d/b/a
LAN SHENG SZECHUAN RESTAURANT,
BIN SHENG YAN, LAM YAN,JOHN DOE,
And JANE DOE,

        Defendants.
-------------------------------------------------------------x

   Notice is hereby given that the defendants, Lan Sheng Restaurant Inc. d/b/a Lan Sheng

Szechuan Restaurant, Bin Sheng Yan and Lam Yan, in the above named case hereby appeal to

the United States Court of Appeals for the Second Circuit from a judgment in favor of the

plaintiff, Zhuoshi Zhou, and against the defendants, Lan Sheng Restaurant Inc. d/b/a Lan Sheng

Szechuan Restaurant, Bin Sheng Yan and Lam Yan, in the amount of $134,704.79 entered in this

action on the 27th day of March, 2014.

Dated: Queens, New York
   April 11, 2014

            _____/S/_____
             Kevin K. Tung, Esq. (KT1478)
             Attorneys for Defendants
            ktung@kktlawfirm.com
            KEVIN KERVENG TUNG, P.C.
            136-20 38th Avenue, Suite 3D
            Flushing, NY 11354
            TEL: (718) 939-4633
            FAX: (718) 939-4688

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
ZHUOSHI ZHOU,

                      Plaintiff,

       -against-

LAN SHENG RESTAURANT INC., et al.,
                      Defendants.
-----------------------------------------------------------X

> USDC SDNY
> DOCUMENT
> ELECTRONICALLY FILED
> DOC #: _____
> DATE FILED: 3/27/2014

13 **CIVIL** 4135 (JMF)

**JUDGMENT**

       Whereas the Court's Oral Opinion was read into the record on March 21, 2014, and the

matter having come before the Honorable Jesse M. Furman, United States District Judge, and the

Court, on March 21, 2014, having rendered its Order directing the Clerk of Court to enter judgment

in Plaintiff's favor against all Defendants in the amount of $134,704.79 and to close the case, and

retaining jurisdiction to adjudicate any dispute over attorney's fees and costs, it is,

       **ORDERED, ADJUDGED AND DECREED:** That for the reasons stated in the

Court's Order dated March 21, 2014, judgment is entered in Plaintiff's favor against all Defendants

in the amount of $134,704.79; the Court will retain jurisdiction to adjudicate any dispute over

attorney's fees and costs; accordingly, the case is closed.

**Dated:** New York, New York
           March 27, 2014

                           **RUBY J. KRAJICK**
                                 Clerk of Court
            BY:
                                 Deputy Clerk

                            **THIS DOCUMENT WAS ENTERED**
                            **ON THE DOCKET ON** _____

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X

ZHUOSHI ZHOU,                                    :

                                    Plaintiff,   :          13 Civ. 4135 (JMF)
                                                 :
                    -v-                          :          ORDER
                                                 :
LAN SHENG RESTAURANT INC. et al.,                :
                                                 :
                                    Defendants.  :

------------------------------------------------------------------------X

```
┌─────────────────────────────────────┐
│ USDC SDNY                            │
│ DOCUMENT                             │
│ ELECTRONICALLY FILED                 │
│ DOC #:_____         │
│ DATE FILED: 03/21/2014               │
└─────────────────────────────────────┘
```

JESSE M. FURMAN, United States District Judge:

As stated in the Court's Oral Opinion read into the record on March 21, 2014, the following tables summarize the Court's findings and conclusions with respect to Plaintiff's hours, wages, and damages in this case:

**Table 1: Effective Hourly Rate**

| Time Period | Weekly Pay | Weekly Hours Worked | Hourly Rate |
|---|---|---|---|
| 10/18/09 - 12/31/09 | $270 | 48.5 | $5.57 |
| 1/1/10 - 3/31/12 | $150 | 51.5 | $2.91 |
| 4/1/12 - 1/31/13 | $200 | 61 | $3.28 |
| 2/1/13 - 2/28/13 | $200 | 51.5 | $3.88 |
| 3/1/13 - 3/15/13 | $200 | 42 | $4.76 |

**Table 2: Unpaid Wages, Overtime, and Spread-of-Hours**

| Time Period | Weeks | Weekly Hours Worked | Weekly Unpaid Wages | Weekly Unpaid Overtime | Weekly Unpaid Spread-of-Hours | Total Damages |
|---|---|---|---|---|---|---|
| 10/18/09 - 12/31/09 | 10.6 | 48.5 | $63.32 | $43.84 | $21.45 | **$1,359.62** |
| 1/1/10 - 6/13/11 | 75.4 | 51.5 | $169.50 | $89.84 | $35.75 | **$22,258.03** |
| 6/14/11 - 3/31/12 | 41.6 | 51.5 | $173.50 | $91.57 | $35.75 | **$12,505.21** |
| 4/1/12 - 1/31/13 | 43.6 | 61 | $158.85 | $159.52 | $42.90 | **$15,741.27** |
| 2/1/13 - 2/28/13 | 3.9 | 51.5 | $134.66 | $80.40 | $35.75 | **$967.42** |
| 3/1/13 - 3/15/13 | 2.0 | 42 | $99.52 | $12.23 | $28.60 | **$280.70** |
| | | | | | | **$53,112.24** |

**Table 3: Summary of Damages**

| | |
|---|---:|
| Minimum Wage, Overtime, and Spread-of-Hours | $53,112.24 |
| NYLL Liquidated Damages (11/24/09 - 4/8/11) | $5,038.90 |
| NYLL Liquidated Damages (4/9/11 - 3/15/13) | $31,696.63 |
| FLSA Liquidated Damages | $29,494.59 |
| NYLL Prejudgment Interest | $12,862.43 |
| WTPA Penalties | $2,500.00 |
| **Total Damages** | **$134,704.79** |

For the reasons stated on the record in the Court's Oral Opinion, the Clerk of Court is directed to enter judgment in Plaintiff's favor against all Defendants in the amount of $134,704.79 and to close the case.

The Court will retain jurisdiction to adjudicate any dispute over attorney's fees and costs. As stated on the record, the parties shall confer in person with respect to the amount of fees and costs that Plaintiff is entitled to, with the hope that they can agree or at least narrow any disputes. In the absence of agreement, Plaintiff shall file any application for such fees, with supporting documentation, by **April 21, 2014**. Any opposition to that application shall be filed by **May 5, 2014**, and any reply shall be filed by **May 12, 2014**. Counsel are encouraged to review the Court's opinions in *Wolinsky v. Scholastic, Inc.*, 900 F. Supp. 2d 332 (S.D.N.Y. 2012), *Pla v. Renaissance Equity Holdings*, 2014 WL 113721 (S.D.N.Y. 2014) and *Cisneros v. Schnipper Restaurant*, 2014 WL 67235 (S.D.N.Y. 2014), which provide some guidance on what constitutes reasonable attorney's fees in this context.

SO ORDERED.

Dated: March 21, 2014
     New York, New York

_____
JESSE M. FURMAN
United States District Judge

## CERTIFICATION OF SERVICE

The undersigned hereby certifies that all counsels of record were served with a copy of this document via CM/ECF, on this 11th day of April, 2014.

Attn: Thomas H.C. Kung, Esq.
Xue & Associates, PC
Attorneys for Plaintiff
401 Broadway, Suite 1009
New York, NY 10013
(212) 219-2275

Dated: Queens, New York
       April 11, 2014

                    /s/ Kevin K. Tung
                    Kevin K. Tung, Esq. (KT1478)
                    Attorneys for Defendants
                    ktung@kktlawfirm.com
                    KEVIN KERVENG TUNG, P.C.
                    136-20 38th Avenue, Suite 3D
                    Flushing, NY 11354
                    TEL: (718) 939-4633
                    FAX: (718) 939-4688

224

```
1    UNITED STATES DISTRICT COURT
1    SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x
2
3    ZHUOSHI ZHOU, on behalf of
3    himself and others similarly
4    situated,
4
5                        Plaintiffs,
5
6             v.                          13 CV 4135(JMF)
6
7    LAN SHENG RESTAURANT, INC.,
7    doing business as Lan Sheng
8    Szechuan Restaurant, et al.,
8
9                        Defendants.
9
10   ------------------------------x
10
11                                       March 21, 2014
12                                       1:37 p.m.
12
13
13   Before:
14
14                    HON. JESSE M. FURMAN,
15
15                                       District Judge
16
16                        APPEARANCES
17
17   XUE & ASSOCIATES, PC
18        Attorneys for Plaintiffs
18   BY:  HSIEN CHIH KUNG
19   Also Present:  MATHEW YOGG, Law Clerk
19
20   KEVIN KERVENG TUNG, PC
20        Attorneys for Defendants
21   BY:  KEVIN KERVENG TUNG
21   Also Present:  HUAN-CHI HUANG, Law Clerk
22
22   MANDARIN INTERPRETER:  ANN CHI HO
23        Attorney for Plaintiff
23
24
25
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

16a

225

```
 1   1:37:00 p.m.
 2              (In open court)
 3              THE DEPUTY CLERK:  Matter of Zhou vs. Lan Sheng.
 4              MR. KUNG:  Good afternoon, your Honor.  Thomas Hsien
 5   Chih Kung on behalf of plaintiff, Mr. Zhou.
 6              THE COURT:  Good afternoon.  Welcome back, Mr. Kung.
 7              MR. TUNG:  Kevin Tung on behalf of all the defendants,
 8   restaurant and personal capacities.
 9              THE COURT:  Good afternoon.  Welcome back to you as
10   well.
11              All right.  We will proceed with, in essence, closing
12   or oral arguments.  And depending on my thoughts at the close
13   of that, I may then give you a ruling.  So on the theory that
14   the plaintiff is the one with the burden of proof here, we'll
15   begin with you, Mr. Tung, and then with Mr. Kung.  So why don't
16   you -- if you can move that podium a little bit forward and
17   then speak from there.  That way, I think everybody will have a
18   better chance of hearing everything.  That's great.
19              And as I indicated, I'll give you each about 20
20   minutes, but if I feel like I have heard what I need to hear, I
21   may tell you to wrap things up.  And otherwise, if I haven't
22   heard what I need to hear, maybe I'll give you extra time.
23   We'll wait and see.
24              You may proceed.
25              MR. TUNG:  Thank you, your Honor.
```

226

```
1        Your Honor, the first position we're taking is that
2   plaintiff's claim before June of 2011 shall be barred on the
3   ground that equitable tolling does not apply here.  From the
4   evidence that we have heard, the owner, owner's testimony,
5   restaurant's employees other than the plaintiff, the posts were
6   there on the walls in the restaurant.  Because notices were
7   given, this area of law is very well settled.  And I pointed
8   out to the Court Exhibit S is the evidence that was the post.
9   They took a copy, and that was the proof that a notice was
10  posted.  Therefore, the statute of limitation should be two
11  years for FLSA.
12       THE COURT:  The statute of limitations for the
13  New York Labor Law claims is six years, correct?
14       MR. TUNG:  That's correct, your Honor, but at least on
15  the federal side, under FLSA, in that should be two years.
16       And the second position we're going to take as to one
17  of those areas, your Honor, you directed us to do some legal
18  research on it.  That was the credit card reduction, the
19  percentage of the amount of money that was -- 8 percent was
20  taken of the credit card tips.  And we did some research, at
21  least one case, which was actually -- I just noticed that case.
22  We were the defendants' attorney.  The citation is
23  2011WL4460642.  In this case, this case actually -- that case
24  actually, the memorandum and order which discussed the credit
25  card reduction and wage taxes, employment taxes reduction
```

227

```
 1    from -- basically this case talks about the employer, the
 2    restaurant owner, can deduct credit card expenses as well as
 3    employment taxes.  Of course, there are some conditions there.
 4            First I'm going to talk about credit card reduction.
 5    Now, for credit card reduction, the case law says that, yes,
 6    the company can deduct credit card expenses, provided they have
 7    to tell the employee, tell the employees here.  Our argument
 8    here is Exhibit E -- remember, Exhibit E, that was a piece of
 9    paper from testimony of the plaintiff as well as other
10    witnesses, I think as well as the owner.  The cashier give him
11    the 8 percent.  How much they calculate every day at the end of
12    every day from the tips -- they deduct the expenses.
13            So our argument is, yes, it may not be very well
14    documented because the restaurant is a start-up restaurant.  It
15    was actually the plaintiff started to work from day one when
16    the restaurant started its business.  So it may not be very
17    well documented, but, still, there's some documentations
18    indicating what percentage of the tips that's deducted from --
19    credit card expenses that's deducted from the tips.  So our
20    argument is that is sufficient.
21            THE COURT:  Your argument is that Exhibit E is
22    documentation of what credit card tips were deducted?
23    Exhibit E, as I recall, was a record prepared by the --
24            MR. TUNG:  I'm sorry.
25            THE COURT:  Mr. Tung, you need to wait for me to
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

228

```
 1   finish, please.
 2              Exhibit E was a document prepared by accountants.
 3              MR. TUNG:  Your Honor, I'm sorry.  I pointed to the
 4   wrong exhibit tab.  It should be Exhibit G.
 5              THE COURT:  And that's the handwritten notation?
 6              MR. TUNG:  Right.  Right.  That is a document from the
 7   testimony at the end of every day, when the cashier deducted
 8   the 8 percent, right, then hand it over to the waiter saying,
 9   these are the amount we deducted by the restaurant.
10              THE COURT:  Okay.
11              MR. TUNG:  Now, also, because the owner actually
12   started this practice for only four months.  So either way,
13   when the calculations of those tips, deductions would not make
14   the outcome of this case different, and that our -- would not
15   actually go over the calculations.
16              Now, in terms of the employment taxes, the case law
17   just cited before also discussed in great detail and the
18   conclusion there, the employer can deduct expenses -- I'm
19   sorry, deduct employment taxes from the credit card wages --
20   tips.  There's one condition, though:  Provided that employer
21   will forward these taxes, withholding taxes, to the tax
22   authorities, such as IRS or other tax authorities.
23              Now, I would like to point out to the Court that from
24   the owner's testimony regarding -- now it's Exhibit E, when the
25   question was asked about the tips was adequate to the female
```

20a

229

1  owner, Ms. Yang -- and remember, the question was asked why
2  there are tips listed on the payroll sheet.  And her testimony
3  was -- if I don't remember it wrong, her testimony was because
4  the plaintiff did not have Social Security numbers.  So the
5  accountant allocated his, the plaintiff's portion of tips, to
6  the woman, the boss, Ms. Yang.
7          So our argument here, and our position here, is
8  because those tips was -- have to belong to the plaintiff, and
9  he didn't -- he never provided his Social Security numbers to
10 the employer.  So the employer, once it's listed, even though
11 she never actually took or shared any tips from the testimony
12 of the restaurant employees and herself, so it was clearly
13 these tips were supposed to be allocated to the plaintiff and
14 the owner's just paying -- forwarding these employment taxes on
15 behalf of the plaintiff, he doesn't have the Social Security
16 card.
17          So that's what's our position here; that both of
18 them -- which our position is, which allows the employer to
19 deduct the employment taxes and credit card expenses, either
20 way.  So the 8 percent -- remember, the percentage, 8 percent
21 was actually told by the plaintiff as it was -- Ms. Yang was
22 asking around.  When she went to a restaurant, she was charged
23 with 8 percent.  So she was asking around, why was 8 percent?
24 And the plaintiff actually told the owner, 8 percent is kind of
25 standard in the industry.  So I don't see anything wrong with

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

230

1    that, other than some documentation may not be that clear.
2    But, still, in essence, that shall be allowed by the law.
3            THE COURT:  All right.  I agree with you that this is
4    a relatively minor part of the case.  So why don't you move on
5    to the rest of it, since you have ten minutes left.
6            MR. TUNG:  Sure.  Okay.
7            Now, your Honor, we did some legal research.  The
8    spread hours, the lunch break was supposed to be allowed, okay.
9    Two hours break is supposed to be allowed.  However, when they
10    add it on to the entire workday schedule, that exceeds ten
11    hours.  And, including lunchtime and everything else, the
12    employer is supposed to pay one extra hour for the split hours.
13    So that we agree, because that's in the law.  But later on I
14    will cover the calculations -- actually, I'm going to do this
15    right now.
16            The other point we have to put out to the Court is
17    cost of meals.  From the testimony of both of the plaintiff and
18    the defendants, the boss, the company didn't charge for their
19    meals.  So there should be a small credit against the minimum
20    wages in favor of the employer.
21            Now, your Honor --
22            THE COURT:  Do you have authority for that
23    proposition?
24            MR. TUNG:  Oh, yes.  I'm sorry.  Yes.  I have the case
25    law here, 643 F.Supp. 2d 302.  That's Padilla v. Manlapaz.
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

```
 1              THE COURT:  And in your judgment is it clear what the
 2    credit should be?  There was no testimony that I recall
 3    regarding the value of those meals.
 4              MR. TUNG:  There is a calculation actually -- there
 5    was a calculation, a meal calculation allowance by the statute,
 6    which the statute is minimum wage order for restaurant
 7    industry, paragraph 137 issued by State of New York, Department
 8    of Labor.  And part 137 of Title 12 of official compliance of
 9    codes, the statute cited as 12 NYCRR 137.  And there was a
10    section that defines that.  Section 137, subsection 1.9 --
11              THE COURT:  Mr. Tung, let me stop you for a second,
12    because I'm looking at the Padilla case that you have cited,
13    and it provides that one of the requirements, in order to
14    invoke the provision that allows for the cost of meals to be
15    treated as an allowance against the minimum wage requirement,
16    the employer is required to furnish to each employee a
17    statement with every payment of wages listing allowances
18    claimed as part of the minimum wage.  And that is from NYCRR
19    Title 12, Section 137.
20              Is there any evidence whatsoever in this case that
21    those statements were provided to the plaintiff?
22              MR. TUNG:  Your Honor, plaintiff --
23              THE COURT:  Let me put it differently.  Not only do I
24    think there is no evidence; I think the evidence is quite clear
25    he was paid in cash and not given any wage statements
```

232

```
 1    whatsoever.
 2             MR. TUNG:  That's correct.  But we don't have
 3    evidence, at least the evidence is not in the record, because
 4    nobody inquired that portion.  Maybe there are other employees
 5    who are regularly employees who would have on their wage
 6    statements, but I cannot make that representation here because
 7    that was not in the evidence.  So I don't know whoever's burden
 8    it is to prove, either the plaintiff have to prove or we have
 9    to prove --
10             THE COURT:  You do.
11             MR. TUNG:  If we do, it is not there in the record.
12    We do not say -- in the record it is not there.  I concede
13    that.
14             THE COURT:  I think I'm limited to the record, so I'll
15    take that as a concession that you can't claim credit for the
16    meals.
17             Go ahead.  Your next point, please.
18             MR. TUNG:  Now, I'm just going to go over -- but even
19    though this is minor, very few dollars, okay, now we're going
20    to go over our calculations and see that plaintiff is not
21    entitled to any recovery.
22             First we start with minimum wage requirement.
23    Actually, from 2011 and until when the plaintiff leaves the
24    job, that stays the same:  7.25 times 8 times 5.  And for 40
25    hours, we calculated $290.  And the actual cash paid to the
```

233

```
 1    plaintiff -- we're talking about weekly basis.  Everything is
 2    weekly basis.  The testimony was he received $400 for each of
 3    ten days, right?  So for a month, for each week is $400.  I'm
 4    sorry.  For each week is $200, $800 for a month, divided by
 5    four.  So each week is $200.  And there's some testimony -- I
 6    don't know if -- it's arguable he probably did not say --
 7    denies, plaintiff denies, but defendant says at the end of the
 8    month she also give $200.  So I don't know the benefit that
 9    shall be given to who, but I just take $200 divided by 4;
10    that's our position.  So all together the plaintiff received
11    $250 per week.  That's actual cash received, plus the tips.
12    The testimony was somewhere around 350 to $400 a week.  So the
13    total payment he received is $650, from our perspective at
14    least, per week.
15              Now, I take down the meal allowance, which is $21, but
16    I can take it out because that is not allowed.
17              Now we're talking about the contributions from the tip
18    to compensate.  So the employer actually doesn't have to pay
19    7.25.  The only amount they have to pay is 4.65.  If we
20    multiply by 8 by 5, that comes to 186.  So in other words, the
21    basic pay, the basic pay per week the employer has to
22    contribute is 104.  We use 290 minus 186 to come up with 194.
23              And also, the spread hour.  We're talking about every
24    day for five days a week.  So that counts to 7.25 times 5,
25    36.25 a week.
```

234

```
 1              We also heard the testimony, everybody is working 40
 2      hours, except they had to rotate for extra two hours.  So our
 3      calculation is 7.25 times 1.5 and times 2, that equals 21.75
 4      per week.
 5              Now, therefore, the employer is required to pay the
 6      plaintiff -- I first use 290 -- had to pay minimum wage, plus
 7      21.75 for overtime, plus the spread hours, 36.25.  So all
 8      together we arrive at a figure 348 per week.  That's what the
 9      employer has to pay the employee.
10              Now let's look at the actual money he received:  250
11      for the actual cash paid by the employer per week, and also
12      plus tips, which is 350 to 400.  So for our perspective we'll
13      take $400.  And the meal allowance, we'll take it out.  So we
14      come to somewhere around 600 to 650.  That's what's actually he
15      received.
16              Now, the $250 we're talking about, the employer
17      actually have to pay 104.
18              THE COURT:  Mr. Tung, let me interrupt you.  You have
19      only a couple minutes left, and I think I can do the math
20      myself.
21              But the bigger issue here, the legal issues, one of
22      which is the premise of your calculation, is that the
23      defendants are entitled to invoke and claim the tip credit in
24      the first place; which is to say, I think the testimony at
25      trial was very clear that absent the tip credit, the defendants
```

235

1    I think effectively admitted that they did not pay minimum
2    wage, that the base rate was 4.25.
3          Now, on what basis do you believe that they are
4    entitled to invoke the tip credit?
5          MR. TUNG:  Because from the testimony -- although I
6    don't know what the court is thinking, but from our argument,
7    they said they have told the plaintiff, or he said -- he denies
8    he was told.  They say they told, and all the other employees
9    say they were aware of that, right.
10         THE COURT:  Well, for starters, under the New York
11   Labor Law the requirement is that the tip credit employee has
12   to receive written notice of the employer's intention to take
13   the tip credit, correct?
14         MR. TUNG:  Correct, yes.
15         THE COURT:  Is there any evidence in the record that
16   the defendants provided written notice to the plaintiff, or any
17   employee, for that matter?
18         MR. TUNG:  Well, other than they said that they talked
19   to him.  There was no written requirement, other than the post
20   on the wall, which is not the tip credit.
21         THE COURT:  Correct.  So I'll take that as a no,
22   there's no evidence in the record of that.
23         And your position on the FLSA, where I don't believe
24   written notice is required but some notice of a specific intent
25   to credit tips toward the minimum wage is required, is that --

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

236

1    that is satisfied by the testimony concerning Ms. Yang's
2    instructions to the plaintiff at the beginning of his
3    employment, is that correct?
4         MR. TUNG:  That's our position.  And also all the
5    other employees who testified, you know, they were all aware.
6         THE COURT:  I think, if I recall, they testified they
7    were aware that the tips were treated as that, but I'm not sure
8    that they testified that they were specifically informed as
9    such by the employers, which is a requirement of the tip
10   credit, correct?
11        MR. TUNG:  That's arguable, your Honor.
12        THE COURT:  Okay.  Why don't you finish up.
13        MR. TUNG:  Sure.  I'll finish up, your Honor.
14        Now, I'm looking at this case, your Honor.  Who is a
15   victim here?  Now, we have an employee, so-called employee for
16   the past four years, while he didn't have a green card.  He was
17   a foreign student, international student, an F1 visa holder.
18   He came to this country.  He's not supposed to work.  He
19   couldn't find any other jobs in the company or something well
20   established, establishment.  So he gets a job.  He finds a job
21   from this restaurant.
22        Now we look at on the other side of the balance scale,
23   okay.  Now, the other side of the scale is a start-up
24   restaurant.  And we have heard the testimony, Mrs. Yang say she
25   was never in the restaurant business.  So before she started

237

```
 1    the restaurant, she asked friends in the restaurant business.
 2    She also asked accountant how she was about to set up the
 3    company in tax matters and all these complicated issues.  So
 4    she did consult with some other people.
 5              Now, for whatever the reason she hired the plaintiff.
 6    She wanted to help him.  Now, at the end of four years,
 7    plaintiff supposed to maintain full-time student -- as a
 8    full-time student, he has to maintain to go to school full
 9    time.  That will consume his hours.  So he cannot possibly work
10    overtime, as he claims, 72 hours per week.  The benefit the
11    court should give here, I think the court should give to the
12    owner.  The employer worked the hours we talked about here.
13    And why do I say this?  Because at the end of the four years,
14    just before he quits, he receive his green card.  Presumably if
15    he can receive a green card, he has been maintaining his legal
16    status for the past four years.  Otherwise, if he let's say in
17    the middle of somewhere he didn't go to school, then he has a
18    problem with his visa; that he cannot convert his visa to a
19    green card unless he has been a lawful visa holder in this
20    country.
21              So somewhere, I don't know -- there's no testimony,
22    but I can just ask the Court to infer if he receives his green
23    card, he didn't overstay in this country on the illegal visa or
24    expired student visa.  So that's what I'm saying.  If he says
25    he can work overtime for so many hours, he couldn't go to
```

238

E3LEZHOT                    Mr. Kung - summations

1   school.  But I think the testimony was not that credible.  The
2   benefit of that should be given to the defendant owner.
3               THE COURT:  All right.  Why don't you wrap up.
4               MR. TUNG:  Sure.  And also regarding punitive damage
5   and liquidated damages, now, these damages, if the Court shall
6   award that has to base -- that was willful.  I don't think we
7   have heard any evidence that the defendant owner was willful to
8   underpay him.  She tried to do the best she could.  She didn't
9   even know -- we heard the testimony of either 8 percent
10  reduction from the tips.  She didn't even do this until the
11  very last four months of the plaintiff's employment, when she
12  realized everybody else in the industry was doing 8 percent.
13              So with all this said -- and also, your Honor, I would
14  like to point it out, this action started with a class action,
15  but only one plaintiff -- all the other employees in the
16  restaurant refused to participate in this lawsuit.  That tells
17  us something.
18              Who's a victim here?  The defendant here, not the
19  plaintiff.  If the Court choose to award $200,000, more than
20  $200,000 that he's seeking in the damages statement, I saw once
21  equity is not balanced.
22              THE COURT:  Thank you very much.
23              Mr. Kung?
24              MR. KUNG:  Thank you, your Honor.
25              Your Honor, I will address defendant counsel's points

239

E3LEZHOT                    Mr. Kung - summations
1    sort of in reverse order; not exactly in that order.  But,
2    first, regarding who was the victim, counsel's argument
3    regarding immigration status is completely irrelevant in this
4    case.  I don't see the relevance, not to mention they're not in
5    the record.
6            Regarding willfulness, both the defendants, Ms. Yang
7    and Mr. Yan, testified clearly that they knew of the law's
8    requirement that the employer shall pay employees overtime at
9    the overtime premium for hours over 40 prior to when the
10   restaurant was even started.  So they knew of this requirement
11   and they failed to pay.
12           Moreover, your Honor, the willfulness requirements are
13   only prior to November of 2009.  Post November of 2009, at
14   least with respect to New York Labor Law, the standard for
15   assessing liquidated damages has been changed to place the
16   burden on the employers to prove that they had a good faith
17   basis and belief that their payment or their underpayment was
18   not in violation of law.  That has not been established on the
19   record, and that is not the case.
20           THE COURT:  Sticking to the question where you bear
21   the burden of proving willfulness, either for the statute of
22   limitations under the FLSA or with the New York Labor Law prior
23   to the change in the law, what do you believe is the evidence
24   of that willfulness?  I understand -- you're correct, I
25   believe, that there was testimony and evidence in the record
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

31a

240

E3LEZHOT                          Mr. Kung - summations
1   that the defendants were aware of the obligation to pay
2   overtime.  But the flip side is, according to Ms. Yang, she was
3   advised by her accountant that they were paying enough to cover
4   their minimum wage and overtime requirements when you
5   considered the tip credit.
6          And ultimately, I think in many respects this case
7   turns on whether the defendants can invoke the tip credit;
8   which is to say, if they could properly include the tips in
9   hourly wages, then I think they had a pretty good argument that
10  the wages did suffice.  If they can't -- we can turn to that in
11  a moment -- then I think by their own testimony and admission
12  they did not pay enough in wages.
13         So is there any evidence in the record that they
14  knowingly or recklessly disregarded the law with respect to
15  whether they could invoke the tip credit?
16         MR. KUNG:  Yes, your Honor.  Since they had knowledge
17  that they were supposed to pay -- I'm sorry, your Honor.  Only
18  with respect to the tip credit?
19         THE COURT:  Well, again, I think the critical issue in
20  this case is whether the tip credit applies or not.  If it
21  does, then I think at least for some periods, the plaintiff
22  probably got the wages he was due.  If it doesn't, then, again,
23  by the defendants' own admission, he wasn't paid the wages he
24  was due under the law, which is to say, again, it turns on the
25  tip credit.

241

E3LEZHOT                    Mr. Kung - summations

1   So I think in order to show that they willfully
2   disregarded their obligations under the law, it really comes
3   down to whether they knew or recklessly disregarded the
4   possibility that they couldn't claim the tip credit.  Do you
5   understand what I'm saying?
6              MR. KUNG:  Yes, your Honor.
7              THE COURT:  In other words, they testified -- and I
8   will tell you now that I don't have any reason not to credit
9   the testimony -- that Ms. Yang testified that she was advised
10  by their accountant that the wages they were paying in
11  conjunction with tips were sufficient to satisfy their
12  obligations under the FLSA and the New York Labor Law.  Now,
13  that may be wrong, right?  You may prevail on those things.
14  But unless you can show that they either knew that was wrong or
15  recklessly disregarded the possibility that that was wrong,
16  it's not clear to me how you would be able to show willfulness.
17             MR. KUNG:  Well, your Honor, first of all, the
18  employers are not entitled to claim the tip credit just as a
19  matter of law.  With respect to whether or not they knew that,
20  the record is a little bit ambiguous on that point.
21             But at the very least, first, Ms. Yang claims to have
22  been dependent on this accountant, who is not an attorney, or
23  at least there's no record to suggest he or she is an attorney,
24  with respect to the payment of the restaurant.
25             She also had conflicting testimony that she knew of

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

242

E3LEZHOT                    Mr. Kung - summations
1   these requirements because she talked with her friends or other
2   people in the restaurant industry before starting the
3   restaurant.  Moreover, this is apparently the same accountant
4   who prepared Exhibit E.  And according to her own testimony,
5   the way this accountant prepared Exhibit E is simply without
6   any documents, just by reporting the taxes as according to what
7   the plaintiff -- excuse me, what the employees and Ms. Yang
8   wanted to report in taxes.  For example, Chef Zhou was making
9   approximately $3,200 a month.  At least for one month, he
10  reported more than $17,000 a month.  That apparently, when
11  confronted -- when Ms. Yang was confronted by the evidence, her
12  testimony was that it's just what Chef Zhou wanted to report
13  that day.
14          THE COURT:  You don't need to address Exhibit E.  I
15  agree with you, based on the evidence at trial, that Exhibit E
16  is virtually worthless when it comes to it being a record of
17  who worked what and was paid what.  So you do not need to
18  address Exhibit E.
19          MR. KUNG:  Yes, your Honor.  At the very least, your
20  Honor, the defendants never consulted an attorney.  And,
21  moreover, to the extent they retained the counsel of Mr. Tung
22  after the commencement of this case, they maintain throughout
23  the testimony, your Honor, that they did not change any
24  policies or practices regarding their hours or pay.  Even after
25  retaining counsel, they stubbornly or recklessly maintained the

243

E3LEZHOT                    Mr. Kung - summations
1  way of payment, which is to say --
2          THE COURT:  That's after the plaintiff is gone from
3  the restaurant, correct?  In other words, it may be that a
4  future plaintiff has a good argument for willfulness, given
5  that they hired a lawyer and have been sued in this case.  But
6  how does that have any bearing on whether their violations of
7  the law with respect to the plaintiff, if any, were willful?
8  How can you use evidence postdating his employment to support
9  an argument that their violations while he was employed were
10  willful?  That makes no sense to me.
11          MR. KUNG:  Your Honor, even prior to that date, they
12  did not care.  They knew of their overtime -- they knew their
13  overtime.  They lied throughout the depositions and prior to
14  the trial that plaintiff never worked overtime, maintained he
15  never worked overtime.  Apparently, even according to
16  defendants' own story, they knew that plaintiff either worked
17  two hours' overtime a week or, at the very least, two break
18  shifts, which means four hours of overtime a week.  They knew
19  that.  They did not care.
20          They never reported in consulting the accountant, your
21  Honor.  They never told their accountants what hours plaintiff
22  worked.  They told the accountant what amount they wanted to
23  pay, and apparently the accountant, just based on that
24  information, told them, "yeah, you're okay.  The way you're
25  paying covers everything."  Which is inaccurate.  Which is

E3LEZHOT                    Mr. Kung - summations
1    wrong.  And that may be attributed to the fact that defendants
2    consulted an accountant regarding labor law compliance rather
3    than an attorney.
4              And there's no evidence on record, your Honor, that
5    they have made any effort to find out, other than the posting,
6    which is not even in Chinese.  And the posting merely states
7    the most basic:  That employees are entitled to 7.25 an hour,
8    overtime, nothing else.  Apparently the defendants took no
9    other action with respect to finding out, in running a
10   restaurant, what's the correct way to pay the employees.
11             And with respect to the issue of tip credit, I
12   disagree with defense counsel's characterization that all of
13   the witnesses testified at trial that they knew what the tips
14   were for.  At the very best, they testified that defendants,
15   Ms. Yang or Mr. Yan, showed them the poster and that the poster
16   told them the minimum wage.  In fact, even in Ms. Yang's own
17   testimony, she stated that she never told the plaintiff
18   anything other than the 7.25 minimum.  She further stated, I
19   did not tell him the details.
20             Peter He testified no one told him that the tips were
21   meant to have satisfied minimum wage.  Same as Mr. Tang.
22   Mr. Tang testified that no one told him tips were supposed to
23   be part of the minimum wage, and that at first he said he
24   learned from the poster.  Then later he said, "oh, it's not the
25   poster; it's just common knowledge within the industry."  So

245

E3LEZHOT                    Mr. Kung - summations

1    the record is absolutely absent of any evidence or testimony
2    that defendants satisfied the most basic FLSA requirement of
3    informing plaintiff of their intent to use tips to satisfy
4    minimum wage.
5           Part of the regulations promulgated under the FLSA
6    also requires that at a minimum plaintiff needed to be told
7    what his cash wage would be and what portion of the tips
8    defendants intend to claim as the tip credit.  That was never
9    in the record, your Honor.  I directly asked Ms. Yang if she
10   ever told plaintiff that she intends to use $2.25 of his tips
11   received every hour as part of his conversation.  She said no.
12          So based on that, your Honor, I think the record --
13   the Court must find that defendants are not eligible to take
14   the tip credit.  And if they're not eligible to claim the tip
15   credit, then by defendants' admission, they did not pay the
16   minimum wage; and also by defendants's admission, they never
17   compensated for overtime because they, throughout litigation,
18   claimed that overtime was never worked.
19          For the first time in this entire case Ms. Lan Yang
20   acknowledged that sometimes plaintiff would work the break
21   shift.  Well, first of all, plaintiff maintained throughout,
22   from complaint to discovery to deposition to direct testimony
23   to on cross, that these policies, the break shifts, the set
24   break shift, and as well as early shift and morning shift,
25   these were all policies, your Honor, that was instituted after

                     SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

246

E3LEZHOT                      Mr. Kung - summations
1   the case was commenced.  Nonetheless, Ms. Yang claims that
2   there's a break separating the middle in which employees are
3   allowed to leave.
4            Later, when pressed, she stated that, oh, one -- I
5   believe the term was stand watch, or waiter is supposed to
6   rotate, take turns and work one shift.  Apparently later,
7   during Mr. Peter He's testimony, he confirmed that, in fact,
8   most waiters worked two days, two days out of the week for that
9   shift time.  Also, the purported schedule also confirms such a
10  fact.  So...
11           THE COURT:  What am I supposed to make of that
12  testimony?  And Exhibit U, I think it was in relation to the
13  plaintiff's claim and testimony that he wasn't entitled to any
14  breaks whatsoever?  In other words, I agree with you there's
15  some inconsistencies in how many breaks the employees were
16  entitled to, how often they were supposed to be, to stand
17  watch, to be on duty in those breaks, precisely the start and
18  end times of the breaks.  But the testimony and evidence, other
19  than from the plaintiff, was very consistent that there were
20  these breaks every day.  And in the face of that, how am I
21  supposed to, or why should I credit the plaintiff's testimony
22  that he wasn't given any breaks whatsoever?
23           MR. KUNG:  Your Honor, one, I think it goes to the
24  credibility of defense witnesses.  Their witnesses are not
25  credible.  They were evasive, incredibly evasive when answering
                  SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300

247
E3LEZHOT                    Mr. Kung - summations
1   questions.  Their stories often were inconsistent even with
2   their own direct testimony.  Further, they were inconsistent
3   between each other.  I believe that significantly impeached
4   their credibility.
5           And to the extent defendants have no records showing
6   the precise work amount plaintiff performed or the precise pay
7   amount plaintiff performed, plaintiff has satisfied his initial
8   burden of showing wage violations by just reference.  And
9   defendants in this case have utterly failed to negate that,
10  either by records, of which there are none, essentially, or by
11  credible testimony, of which we contest also there are none.
12          THE COURT:  Why don't you turn to the credit card
13  deductions, just to address that before you finish.
14          My question there is, even assuming that the
15  defendants were not entitled to deduct money from the credit
16  card tips, is there any evidence in the record for me to find
17  how often they did that, what amount they did that for and so
18  forth?
19          MR. KUNG:  No, your Honor, only to the extent
20  plaintiff testified, and defendants readily admit, that this
21  was a regular occurrence.  It happened every night from the end
22  of -- either November or December of 2012 until at least
23  when --
24          THE COURT:  Okay.  So assume that I agree with you
25  that that was unlawful.  What damages, if any, would the
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

E3LEZHOT                    Mr. Kung - summations
1   plaintiff be entitled to, or is the failure to prove what
2   damages he'd be entitled to fatal to getting any damages for
3   that at all?
4           MR. KUNG:  No, I don't believe our lack of specific
5   amount, your Honor, would preclude us from recovering any
6   damages at all.  I believe the law is settled that the Court
7   may award damages, even if the damages were approximate and
8   just an average.
9           THE COURT:  But on what basis can I even approximate
10  what those damages would be?  In other words, there was that
11  one -- I think it was Exhibit G, that one handwritten
12  notation -- I don't have it in front of me, but I think it was
13  that $31 or something was deducted.  But I believe that's the
14  only evidence in the record, period, as to what quantity of
15  tips the plaintiff received from credit cards; which is to say
16  maybe he's entitled to some portion of that $31, but beyond
17  that, how could I award any damages, except through sheer
18  speculation?
19          MR. KUNG:  Well, your Honor, we can use that as some
20  sort of basis with whatever way or attribution the Court thinks
21  appropriate.  Your Honor is correct, we do not have any
22  evidence as to the amount deducted by this 8 percent deduction
23  in the record.
24          THE COURT:  Why don't you wrap up, and then I'll I
25  think give you my ruling.
               SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

249

E3LEZHOT                    Mr. Kung - summations

1              MR. KUNG:  Yes, your Honor.
2              Your Honor, we in this case, we ask that the Court,
3    based on the testimony of the witnesses and evidence we've
4    seen, that the damage calculations should be based on
5    plaintiff's just and reasonable testimonies and recollections
6    and not from defendants' questionable testimonies, and also the
7    lack of records, due to the FLSA's burden shifting structure.
8    We believe that the Court must find that the plaintiff was not
9    paid minimum wage.
10             Defendants are not entitled to claim the tip credit.
11   Defendants failed to pay plaintiff at an overtime premium; no
12   spread of hours, as defense counsel conceded.  And further, the
13   failure was willful, as they proffered no evidence of any good
14   faith basis or any actual legitimate conduct in which they
15   attempted to comply with labor law, despite knowing the labor
16   law's requirements.
17             THE COURT:  Thank you very much.
18             MR. KUNG:  Thank you, your Honor.
19             THE COURT:  I am prepared to give you my ruling.
20             Having heard all of the evidence, read the parties'
21   pretrial submissions and listened to counsel's closing
22   arguments, let me begin by stating the applicable burden of
23   proof.  The FLSA and New York Labor Law require employers to
24   keep records of their employees' wages, hours and other
25   information.  See Title 29, United States Code, Section 211(c)

250

E3LEZHOT                    Mr. Kung - summations

1   and New York Labor Law Sections 195(4) and Section 661.  Where
2   they fail to do so, an employee can meet his burden under
3   either statute by submitting sufficient evidence from which
4   violations of the law and the amount of an award may be
5   reasonably inferred.  See Reich v. Southern New England
6   Telecommunications Corporation, 121 F.3d, 58 at 66, (2d Cir.
7   1997).  The employee should not speculate but may rely solely
8   on his or her present memory and recollection to carry that
9   burden.  See Lanzetta v. Florio's Enterprises, Inc., 763
10  F.Supp. 2d 615 at 618, (S.D.N.Y 2011).  If an employee presents
11  such evidence, the burden then shifts to the employer to "come
12  forward with evidence of the precise amount of work performed
13  or with evidence to negative the reasonableness of the
14  inference to be drawn from the employee's evidence."
15  Anderson v. Mt. Clemens Pottery Company, 328 U.S. 680 at 688
16  (1946).  Where the employer does not, "the Court may then award
17  damages to the employee, even though the result be only
18  approximate."  That is Id. at 688.
19          Applying that framework, I find that defendants have
20  failed to produce adequate records and that plaintiff can,
21  therefore, establish his unpaid work records through
22  recollection alone.  Quite simply, defendants have submitted no
23  records that would establish the amount that plaintiff worked.
24          The parties stipulated in the joint pretrial order
25  that plaintiff was never required to clock in or clock out of

                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

251

E3LEZHOT                    Mr. Kung - summations
1   the restaurant, and that the restaurant did not use any formal
2   timekeeping system to track hours.  That is Section G and
3   paragraph 8 of the joint pretrial order.  Additionally, Bin
4   Sheng Yan admitted that the restaurant made no effort
5   whatsoever to keep track of when the restaurant's employees
6   traded shifts or whether they were appropriately compensated
7   when doing so.  That is page 179 of the transcript.
8           I excluded defendants' only purported log of
9   plaintiff's work hours, Exhibit R, because Mr. Yan acknowledged
10  that the document was prepared in anticipation of litigation.
11  And under well settled law, it was, therefore, not admissible
12  as a business record.  That admission on his part was at
13  transcript page 151.  And for the proposition that a document
14  prepared in connection with or for litigation is not admissible
15  as a business record, see Potamkin Cadillac Corp. vs. BRI
16  Coverage Corp., 38 F.3d 627 at 632 (2d Cir. 1994).  And Exhibit
17  E -- allegedly a document prepared by Lan Yang's accountant
18  that tracked employees' wages; that is transcript page 65 --
19  does not provide any reliable measure of plaintiff's hours.
20          Ms. Yang herself could not interpret the document.
21  She admitted that it did not contain all of the wages that the
22  restaurant had paid its employees and the numbers in the
23  document did not correspond to the employees' wages.  See
24  transcript pages 66, 72 and 73.  In other words, it is no
25  record whatsoever of the hours and wages that the plaintiff

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

252
E3LEZHOT                    Mr. Kung - summations
1   worked and was paid.
2          Let me turn, then, to my findings on the amount that
3   plaintiff worked.  By necessity, my findings are only an
4   approximate, as plaintiff's testimony was not entirely clear on
5   every aspect of this issue.  Where his testimony was ambiguous
6   or inconsistent, I have used the most conservative figures to
7   make my findings.
8          In 2009 plaintiff worked some half days, which I find,
9   based on plaintiff's testimony, were 4.5 hours long.  That is
10  paragraph 16 of the plaintiff's affidavit.  That year and
11  thereafter, until he left the restaurant in March 2013, he also
12  worked full days.  How long those full days were is somewhat
13  more complicated.
14         First, there is some ambiguity as to when plaintiff
15  finished his work at the end of each day.  Plaintiff states in
16  his affidavit that he worked 12-hour days from 11:00 a.m. to
17  11:00 p.m. from January 1, 2010, to March 15, 2013.  That is
18  paragraphs 19 and 20 of his affidavit.  But plaintiff also
19  indicated in court that he would sometimes finish work as early
20  as 10:30 p.m. -- transcript pages 25 and 36 -- and that he
21  worked between 50-something and 60 hours per week in the year
22  2010.  That is transcript page 35, a calculation which is not
23  consistent with six full days of 12 hours each.  He also stated
24  that he worked until "10:30, 11:00" in his deposition.  That is
25  page 59 of the deposition.  Accordingly, I find that when
                    SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300

253

E3LEZHOT                    Mr. Kung - summations
1   plaintiff worked, quote/unquote, full days, he left at
2   approximately 10:30, meaning that he worked for up to 11.5
3   hours but not 12.
4          The second source of complication concerns break time.
5   Plaintiff stated in his affidavit at paragraph 13, and
6   reiterated in court at transcript page 23, that he was not
7   permitted to take uninterrupted breaks.  Defendants, however,
8   contend that all employees were given a two-hour break each day
9   during which they were free to rest or leave the restaurant.
10  That is transcript pages 62, 96 and 167.
11         Although defendants' evidence is somewhat inconsistent
12  as to the precise times or numbers of these breaks, defendants'
13  witnesses were largely consistent in affirming the existence of
14  a two-hour break, and I credit that testimony.  The existence
15  of the break was also corroborated by the schedule introduced
16  through Mr. He, Exhibit U.
17         At the same time, I find that plaintiff was not
18  permitted to take uninterrupted breaks on every full day that
19  he worked.  Instead, based on Exhibit U and the testimony of
20  Mr. He at pages 194 and 199, I find that plaintiff was required
21  to, quote/unquote, stand watch, as Mr. Tang called it at page
22  135 of the transcript, twice a week in case customers came into
23  the restaurant during the break period.  That is to say, I find
24  that two days per week the break was not actually a break at
25  all, as plaintiff remained on duty.
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

254
E3LEZHOT                    Mr. Kung - summations
1            Let me turn then to my findings with respect to how
2     much plaintiff worked during each relevant period.
3            Consistent with the findings I just made, I conclude
4     that for the first period from October 18 to December 31, 2009,
5     plaintiff worked four half days per week and three full days
6     per week, one of which was without a break, for a total of 48.5
7     hours.  See paragraph 16 of the plaintiff's affidavit.
8            Second, from January 2010 through March 2012, I find
9     that plaintiff worked as a waiter five days per week; that he
10    worked 9.5 hours on three of those days and 11.5 hours on two
11    of those days, for a total of 51.5 hours per week.  See
12    paragraph 19 of his affidavit.
13           Finally, from April 1, 2012, to March 15, 2013,
14    plaintiff's last day of employment, I find that plaintiff
15    worked as a waiter six days most weeks.  In his affidavit at
16    paragraph 20, plaintiff testified that that schedule began in
17    March 2012, but on cross-examination he testified that it was
18    March or April.  That's transcript page 39.  So I have opted to
19    use the more conservative date of April 1, 2012.  Toward the
20    end of that period of his tenure at the restaurant, however,
21    plaintiff began experiencing back pain, so he decreased his
22    workload to five days a week after January 2013.  See page 81
23    in the plaintiff's deposition.  Plaintiff also testified that
24    there were a, quote/unquote, couple of occasions at the end,
25    quote/unquote, when he worked only four days because he was in

255

E3LEZHOT                    Mr. Kung - summations
1    pain.  See the same page of his deposition.
2            Accordingly, I find first that from April 1, 2012,
3    through January 31, 2013, plaintiff worked four 9.5-hour days
4    and two 11.5-hour days per week for a total of 61 hours per
5    week; second, that from February 1, 2013, through February 28,
6    2013, plaintiff worked three 9.5-hour days and two 11.5-hour
7    days, for a total of 51.5 hours per week; and third, that from
8    March 1, 2013, through March 15, 2013, plaintiff worked two
9    11.5-hour days and two 9.5-hour days, for a total of 42 hours
10   per week.
11           Now, let me add that I do not find that the defendants
12   carried their burden to rebut the plaintiff's showing through
13   his recollection of how many hours they have worked.  One of
14   the arguments made was that because the plaintiff attended
15   school and because he later obtained a green card, that I
16   should not credit his testimony that he could not have worked
17   those hours because he was attending school.
18           I find that argument completely unpersuasive.  Number
19   one, there is very little evidence in the record of how many
20   hours per week the plaintiff attended school.  The plaintiff
21   himself indicated that he left school because his attendance
22   was unsatisfactory.  I will note that I'm not relying on the
23   letters that stated that from the school itself, because I
24   excluded those from evidence, but the plaintiff himself did
25   testify on that score.  But more broadly, there was no evidence
                 SOUTHERN DISTRICT REPORTERS, P.C.
                         (212) 805-0300

256

E3LEZHOT                          Mr. Kung - summations

1   whatsoever as to how many hours a week he attended school.  And
2   I don't see any reason why the mere fact that he attended
3   school or later obtained a green card is evidence that he
4   attended school for hours that would have precluded him from
5   working the hours that he did, in fact, work.
6        And Mr. Tung's argument that I should infer from the
7   fact that he received a green card that he was, A, in
8   compliance with the requirements of his visa, and, B, that that
9   compliance would have precluded him from working the hours that
10  he has testified he worked is not persuasive to me and relies
11  entirely on speculation and not on evidence.
12       So let me turn, then, to my findings as to plaintiff's
13  pay.  In the joint pretrial order, the parties stipulated to
14  the amount that plaintiff was paid as a base salary.  That is,
15  again, Section G, paragraphs 4 through 6 of the joint pretrial
16  order.
17       Consistent with those stipulations, I find that
18  plaintiff's pay was as follows:  In 2009 he was paid on a daily
19  basis at the rate of $30 for every half day and $50 for every
20  full day.  In January 2010 his pay cycle changed.  From
21  January 2010 to February 2012, he was paid $300 two times per
22  month, and from March 2012 to March 2013, he was paid $400
23  twice a month, both of those excluding tips.
24       I do not credit Lan Yang's claim that she paid the
25  plaintiff an extra $200 per month for overtime.  That is page
                  SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300

257

E3LEZHOT                    Mr. Kung - summations
1   92 of the transcript.  That assertion was contained nowhere in
2   her affidavit, and Mr. Yan himself admitted that he had not
3   heard of any such payment until Ms. Yang's testimony in court
4   the prior day.  That is page 163 of the transcript.  Now, for
5   those reasons and based on my assessment of her credibility, I
6   do not credit that testimony whatsoever.
7           Let me turn then to my conclusions of law.
8           First, I conclude that defendants are not entitled to
9   the tip credit under either the FLSA or the New York Labor Law.
10  To be eligible for the tip credit under the FLSA, the employer
11  must inform the employee of the tip credit provision of the
12  FLSA.  See Copantitla v. Fiskardo Estiatorio, Inc., 788 F.Supp.
13  2d 253 at 287, (S.D.N.Y 2011).  New York law is even stricter
14  requiring an employer to give each employee written notice of
15  the amount of tip credit, if any, to be taken from the basic
16  minimum hourly rate.  See NYCCRR Title 12, Section 146-2.2(a).
17  The burden is on the employer to demonstrate compliance with
18  these conditions.  See, for example, Chan v. Sung Yue Tung
19  Corp., 2007 WL 313483 at page 18 (S.D.N.Y. 2007).  Here,
20  defendants have not even come close to meeting that burden.
21          Plaintiff testified that he was never informed of
22  defendants' intent to use his tips as a credit against their
23  minimum wage obligations.  See his affidavit at paragraph 25.
24  And I credit that testimony, in no small part because it was
25  corroborated by the testimony of both Mr. Tang and Mr. He.  See

258

E3LEZHOT                    Mr. Kung - summations
1   transcript pages 125 and 213.  Moreover, Mr. Yan himself
2   admitted in his deposition, and again on the stand in court,
3   that the restaurant did not even begin to track employees' cash
4   tips until the end of 2012 or the beginning of 2013.  See
5   Mr. Yan's deposition at page 36 and the transcript of the trial
6   at page 159.
7            In light of that evidence, I find that plaintiff was
8   not given notice of defendants' intent to invoke the tip
9   credit.  And lest there be any doubt, I do not credit Mr. Yan's
10  claim that his mother told plaintiff about the tip credit in an
11  interview -- that is transcript page 160 -- especially because
12  Ms. Yang herself did not provide any details regarding that
13  interview.  Whatever the plaintiff was told about the tip
14  credit, it did not rise to the level of specificity that is
15  required for an employer to claim the tip credit under either
16  the FLSA or the New York Labor Law.
17           Let me also say two things.  One, I think the other
18  employees did testify that it was their understanding that
19  their tips formed part of their hourly wage.  That
20  understanding, even if it was shared by the plaintiff, and
21  there was no evidence of that at trial, is not sufficient for
22  an employer to claim the tip credit.  That requires explicit
23  notice by the employer.  And, again, there was no evidence of
24  that here.
25           Number two, lest there be any doubt, Exhibit S, which
                    SOUTHERN DISTRICT REPORTERS, P.C.
                         (212) 805-0300

259

E3LEZHOT                    Mr. Kung - summations

1  is the notice that was allegedly -- and I do find, was posted
2  at the restaurant, is not notice of the tip credit.  It does
3  reference the fact that tips may count toward the minimum wage,
4  but that does not suffice as notice of and intent to actually
5  invoke the tip credit.  And there's no law or no cases that
6  would support that, to my knowledge.
7          Next, I find that the proper statute of limitations
8  under the FLSA is, as Mr. Tung has argued, two years.  While
9  two years is the default statute of limitations, it may be
10 extended to three where an employer's violations are,
11 quote/unquote, willful.  See Section 255(a) of Title 29 of the
12 United States Code.  A willful violation of the FLSA occurs
13 when the employer "either knew or showed reckless disregard for
14 the matter of whether its conduct was prohibited by the
15 statute."  McLaughlin v. Richland Shoe Company, 486 U.S. 128
16 and 133 (1988).
17         The burden of proving willfulness is on the plaintiff.
18 See Young v. Cooper Calendar Corp., 586 F.3d 201 at 207 (2d.
19 Cir. 2009).  Plaintiff has not met that burden here.  Among
20 other things, the evidence shows that Ms. Yang consulted an
21 accountant in connection with plaintiff's hourly wage and that
22 she believed that the restaurant was in compliance with the
23 law, and I credit that testimony.  Yang deposition at page 86
24 and transcript of trial at page 90.  In addition, the
25 restaurant did post notices informing employees of the minimum

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

260

E3LEZHOT                    Mr. Kung - summations
1    wage.  Exhibit S and Mr. Yan's deposition at page 53, as well
2    as the testimony of Mr. He and Mr. Tang.  I think, as I
3    indicated during the closing arguments, the defendants'
4    liability in this case turns largely on their inability to
5    invoke the tip credit.  And as Mr. Kung conceded in his closing
6    argument, the record is -- as he put it, it was, quote/unquote,
7    a little ambiguous with respect to whether the defendants
8    willfully disregarded the law with respect to the tip credit.
9    I think that is generous.  I don't think there is any evidence
10   whatsoever in the record that they either knew or recklessly
11   disregarded the law with respect to the tip credit.  And in
12   that regard, I do not think that the plaintiff has carried his
13   burden of showing willfulness.
14           It follows, by the way, that there is even less basis
15   to apply the doctrine of equitable tolling, which applies in
16   only "rare and exceptional circumstances."  Zerilli-Edelglass
17   v. New York City Transit Authority, 333 F.3d 74 at 80 (2d. Cir.
18   2003).  Accordingly, defendants are liable for FLSA violations
19   only from June 14, 2011, two years prior to the filing of the
20   complaint onwards.  Now, as Mr. Tung conceded, the statute of
21   limitations for purposes of state law claim is six years, and
22   here that covers the full period during which the plaintiff
23   worked at the defendant restaurant.
24           The next question is what the applicable minimum wage
25   was during plaintiff's employment.  For the entirety of

                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

261

E3LEZHOT                    Mr. Kung - summations
1   plaintiff's employment, the minimum wage under the New York
2   Labor Law was $7.15.  See New York Labor Law Section 652(a).
3   And the minimum wage under the FLSA was 7.25.  See Title 29,
4   U.S. Code Section, 206(a)(1)(C).  Plaintiff can recover for
5   unpaid minimum wages only under one of the two statutes, so the
6   applicable rate is the higher of the two.  See Wicaksono v. XYZ
7   48 Corp., 2011 WL 2022644 at page 3 (S.D.N.Y. 2011).
8   Accordingly, the New York Labor Law's $7.15 rate applies from
9   the beginning of plaintiff's employment through June 13, 2011,
10  and the FLSA's 7.25 rate applies from June 14, 2011, through
11  the end of plaintiff's tenure.
12          Based on those figures and my findings about
13  plaintiff's hours for each period, I have prepared a table,
14  table one, showing plaintiff's hourly rate during his
15  employment by defendants.  As that table, which I will docket
16  following this proceeding, shows, plaintiff's effectively
17  hourly rate ranged from $2.91 an hour at the lowest to $5.57
18  per hour at the highest; which is to say, I find that
19  defendants did not pay plaintiff the applicable minimum wage at
20  any point during his employment.  The conclusion that
21  plaintiffs are liable is unsurprising, as Ms. Yang herself
22  admitted on the stand that plaintiff's pay, without tips --
23  and, again, I find that they are not entitled to take tips into
24  account -- did not come close to the minimum wage.  See page 90
25  of the transcript.
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

E3LEZHOT                    Mr. Kung - summations
```
 1            Defendants are also liable for overtime compensation
 2   for any week in which an employee works more than 40 hours, the
 3   FLSA and New York Labor Law required the employer to pay one
 4   and one-half times the ordinary minimum wage rate.  See
 5   Title 29, U.S. Code, Section 207(a), NYCCRR, Title 12,
 6   Section 146-1.4.  As Table 1 shows -- again, I will docket
 7   Table 1 following this proceeding -- plaintiff worked more than
 8   40 hours a week for the entirety of his employment and he was
 9   never paid at an overtime rate for those hours.  Again,
10   Ms. Yang and Mr. Yan effectively conceded liability for
11   overtime violations, albeit not quite as much as I am finding,
12   when they testified at trial that plaintiff worked
13   approximately or at least 42 hours per week.  See transcript at
14   pages 89 to 90 and 171.  Thus, plaintiff is entitled to one and
15   one-half times the applicable minimum wage for all hours in
16   excess of 40 that he worked in each week.
17            Next, as Mr. Tung conceded, defendants are liable for
18   failure to pay so-called spread of hours compensation.  Where
19   an employee's spread of hours -- defined by New York law as the
20   length of the interval between the beginning and end of an
21   employee's workday, including intervals off-duty -- exceeds 10
22   hours, the New York Labor Law obligates employers to pay one
23   additional hour of pay at the basic minimum hourly rate.  See
24   NYCCRR Title 12, Section 146-1.6.  Plaintiff established, and
25   defendants effectively admitted -- again, Mr. Tung expressly
```

263
E3LEZHOT                    Mr. Kung - summations
1   conceded -- that the interval between the beginning of his full
2   workdays and the end of those days was, in fact, greater than
3   10 hours.  Again, that's because the break does not count for
4   purposes of spread of hours.  See the plaintiff's affidavit
5   paragraph 16 and 19 to 20.  He's, therefore, entitled to a
6   spread of hours premium for each full day that he worked,
7   consistent with my findings as to how many such days there were
8   during each relevant period earlier.
9           In short, defendants are liable for minimum wage over
10  time and spread of hours damages as shown in Table 2, which
11  will also be docketed after this proceeding.  Those documents
12  total $53,112.24.
13          That does not end the matter, of course.  First,
14  defendants are also liable under the New York Wage Theft
15  Prevention Act (the "WTPA").  That law, which became effective
16  April 9, 2011, requires an employer to provide an employee with
17  a written notice in his or her primary language containing,
18  among other things, the employees' rate of pay.  See New York
19  Labor Law Section 195(1)(a).  Plaintiff established that
20  defendants never provided him with any notice, let alone a
21  notice in Chinese.  See affidavit paragraph 26.  He is,
22  therefore, due damages of $100 for each week that those
23  violations occurred.  And because the number of those weeks
24  exceeds 25, he is entitled to the maximum of $2,500.  See
25  New York Labor Law Section 198(1-d).

264
E3LEZHOT                    Mr. Kung - summations
 1          Next, I find that defendants are not liable for
 2   unlawful tip withholding.  As a matter of law, tip withholding
 3   cannot give rise to liability under the FLSA because I have
 4   already held that defendants cannot rely on the tip credit in
 5   the first place.  See Chan v. Triple 8 Palace, Inc. 2006 WL
 6   851749 at page 15, (S.D.N.Y. 2006).  With respect to the
 7   New York Labor Law, there is some indication that defendants
 8   did violate the law, maybe Section 196-d, which prohibits an
 9   employer from retaining any part of a gratuity or any charge
10   purported to be a gratuity for an employee by deducting
11   8 percent from plaintiff's credit card tips beginning in late
12   2012.  See, for example, Cao v. Wu Liang Ye Lexington
13   Restaurant, Inc. 2010 WL 4159391 at page 4 (S.D.N.Y. 2010),
14   holding the defendant restaurant liable for deducting amounts
15   from employees' tips in excess of a, quote/unquote, reasonable
16   credit card processing fee, which the Court determined to be
17   3 percent.
18          Let me note that I did have a chance to review the
19   case cited by Mr. Tung, namely Widjaja v. Kang Yue USA Corp.,
20   2011 WL 4460642 (E.D.N.Y. 2011).  And it doesn't affect my view
21   that in all likelihood the defendants were not in compliance
22   with the law.  As that case makes clear -- this is at pages 5
23   and 6 -- a defendant is required to forward whatever amounts
24   were deducted for purposes of taxes to the IRS.  And in this
25   case, despite Mr. Tung's somewhat creative argument, I don't

265

E3LEZHOT                    Mr. Kung - summations
1  think there is any evidence in the record to support a finding
2  that the defendants actually did that.  And so, consistent with
3  Judge Mauskopf's decision in that case, I do not think that
4  they would be able to justify the deductions that they made
5  from the credit card tips.
6          Now, having said that, plaintiff, by Mr. Kung's own
7  admission, has adduced no evidence beyond that one handwritten
8  notation as to the amount of credit card tips that he received.
9  And to that matter, the plaintiff did not even include withheld
10 tips in his proposed damages calculation and Exhibit C of the
11 pretrial order.  Accordingly, notwithstanding my belief that
12 the defendants failed to comply with the law, I will not award
13 plaintiff damages for the unlawful withholding of tips because
14 I do not think the evidence of what those damages are is in the
15 record.
16         But plaintiff is entitled to liquidated damages.  More
17 specifically, consistent with the majority of courts in this
18 circuit, I conclude that plaintiff is entitled to liquidated
19 damages under both statutes as liquidated damages serve
20 different purposes under the two statutes; that is, under the
21 FLSA they are compensatory in nature, whereas under the
22 New York Labor Law they constitute a penalty to deter an
23 employer's willful withholding of wages due.  See Switzoor v.
24 SCI Engineering, PC, 2013 WL 4838826 at page 5 (S.D.N.Y. 2013).
25         Under the FLSA a district court is generally required
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

266

```
E3LEZHOT                    Mr. Kung - summations
```

1    to award a plaintiff liquidated damages which are equal to the
2    amount in unpaid wages.  See Title 29, U.S. Code, Sections
3    216(b) and 260, and Barfield v. NYC Health and Hospitals
4    Corporation, 537 F.3d 132 at 150 (2d. Cir. 2008).  District
5    courts can deny liquidated damages only where the employer
6    "acted in subjective good faith with objectively reasonable
7    grounds for believing that its acts or omissions did not
8    violate the FLSA."  Barfield, 537 F.3d at 150.  The employer
9    bears a burden of proving good faith and reasonableness, and
10   that burden is a, quote/unquote, difficult one, with double
11   damages being the norm and single damages the exception.  See
12   Herman v. RSR Security Services Limited, 172 F.3d 132 at 142
13   (2d Cir. 1999).
14            Likewise, the New York Labor Law provides for
15   liquidated damages unless the employer proves a good faith
16   basis to believe that its underpayment of wages was in
17   compliance with the law.  See New York Labor Law, Section
18   198(1-a).  Prior to November 24, 2009, however, the burden was
19   on plaintiffs to prove that New York Labor Law violations were
20   willful, a standard that did not or does not materially differ
21   from the FLSA willfulness standard that I described earlier.
22   See Kuebel v. Black & Decker, Inc., 643 F.3d 352 at 366 (2d.
23   Cir. 2011); McLean v. Garage Management Corp. 2012 WL 1358739
24   at Pages 8 and 9 (S.D.N.Y. 2012).  Under the current version of
25   the New York Labor Law, liquidated damages are also 100 percent

267

E3LEZHOT                    Mr. Kung - summations
1   of unpaid wages.  See Section 198(1-a).  But that provision
2   became effective only on April 9, 2011 and does not apply
3   retroactively.  See Maldonado v. La Nueva Rampa, Inc., 2012 WL
4   1669341 at page 9, note 19 (S.D.N.Y. 2012).  Prior to April 9,
5   2011, the New York Labor Law permitted recovery of only
6   25 percent of unpaid wages.  See Paz v. Petra, 2012 WL 121103
7   at page 12, note 10 (S.D.N.Y. 2012).
8              Applying those standards here, where the burden is on
9   defendants, they have fallen short.  Defendants are required to
10  show that they took active steps to ascertain the dictates and
11  requirements of the FLSA and New York Labor Law.  See Barfield,
12  537 F.3d at 150.  And they clearly have not done so.  The fact
13  that defendants may have consulted with an accountant and
14  believed they were in compliance with the law is insufficient
15  to meet their heavy burden, especially given their total
16  failure to comply with numerous basic recordkeeping
17  requirements and their questionable, if not unlawful, practice
18  of deducting 8 percent from all waiters' credit card tips
19  starting in 2012.
20             At the same time, where plaintiff has the burden of
21  demonstrating willfulness, specifically under the New York
22  Labor Law, from the beginning of his employment to
23  November 23rd, 2009, he has not met that burden either, for the
24  same reasons that plaintiff failed to demonstrate willfulness
25  for purposes of the FLSA statute of limitations.  In sum, I
                  SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300

268

E3LEZHOT                    Mr. Kung - summations
1  find that plaintiff is entitled to FLSA liquidated damages
2  beginning on June 14, 2011, and New York Labor Law liquidated
3  damages beginning on November 24, 2009.
4           Plaintiff may also receive prejudgment interest on
5  unpaid wages owed under the New York Labor Law but not the
6  FLSA.  See Santillan v. Henao, 822 F.Supp. 2d 284 at 298
7  (E.D.N.Y. 2011) and McLean 2012 WL 1358739 at page 10.
8  Accordingly, plaintiff is entitled to prejudgment interest on
9  his New York Labor Law compensatory damages calculated from a
10  single midpoint date through the date of judgment at 9 percent
11  per year.  New York CPLR, Rules 5001 and 5004.
12           Now, let me just mention before I conclude my findings
13  as to the measure of damages that I think this was clear from
14  my comments during the oral argument, but I do not find that
15  the defendants are entitled to claim credit for the meals that
16  they provided the plaintiff.  I think Mr. Tung effectively
17  conceded as much, but under the case that he cited to me,
18  Padilla v. Manlapaz, 643 F.Supp. 2d 302 (E.D.N.Y. 2009), a
19  defendant who seeks to claim credit for meals provided to an
20  employee has to show that that credit was -- that the plaintiff
21  was advised of that credit and regular statements provided to
22  the employee.  And as Mr. Tung conceded, there is no evidence
23  at all in the record here to support a conclusion that that was
24  done.  Whether it was or was not, I am obviously limited to the
25  record and evidence before me.  And as Mr. Tung conceded, there

269
E3LEZHOT                    Mr. Kung - summations

1   is no evidence of such statements here.  So the defendants are
2   not entitled to any credit for the meals that they provided to
3   the plaintiff.
4            That concludes my findings of fact and conclusions of
5   law with respect to the measure of liability.  Consistent with
6   my findings and conclusions, plaintiff's total damages are
7   $134,704.79, as summarized in Table 3, which will also be
8   docketed following this proceeding.
9            The only remaining issue is defendants' argument that
10  Bin Sheng Yan does not qualify as an employer under the
11  New York Labor Law and the FLSA.  I conclude that that argument
12  is frivolous and, thus, that all three defendants are liable
13  for the violations described and held above.  The FLSA defines
14  an employer as any person acting directly or indirectly in the
15  interest of an employer in relation to an employee.  See Title
16  29, U.S. Code, Section 203(d).  This definition has been
17  described as a broad one in accordance with the remedial
18  purpose of the FLSA.  See Zheng v Liberty Apparel Co., 355 F.3d
19  61 at 66 (2d. Cir. 2003), which explicitly recognizes the
20  possibility of joint employment for purposes of determining
21  FLSA responsibilities.  See Barfield, 537 F.3d at page 141.
22  Significantly, employer status does not require continuous
23  monitoring of employees.  And it may be exercised only
24  occasionally, without moving the employment relationship from
25  the protections of the FLSA, as such limitations on control do
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

270

E3LEZHOT                    Mr. Kung - summations
1  not diminish the significance of its existence.  See Herman,
2  172 F.3d at 139.  The standard under the New York Labor Law is
3  similar, and courts in this district generally apply the same
4  test to both statutes.  See Hart v. Rick's Cabaret
5  International, Inc., 2013 WL 4822199 at page 30 (S.D.N.Y.
6  2013).
7           Applying those standards here, Bin Sheng Yan plainly
8  qualifies as an employer.  To begin with, his interrogatory
9  responses are merely dispositive on the issue.  They state that
10 he "is the manager of Lan Sheng Restaurant," that "nobody has
11 authority to the management work except" him, and that he was
12 the person responsible for "maintaining Lan Sheng Restaurant's
13 payroll, bookkeeping and accounting practices."  That's
14 Exhibit C at pages four to five.  I do not credit Mr. Yan's
15 disavowal of those responses in his testimony the other day.
16 See the transcript at pages 157 to 158.  The fact is that he
17 himself swore to their truth, and that even after changing
18 counsel, he never made any effort to amend or correct those
19 statements.
20          In any event, Mr. Yan's employer status is clear from
21 the rest of the evidence as well.  Mr. He referred to him as
22 the, quote/unquote, boss.  Transcript pages 208 to 209.  And
23 both Mr. Tang and Mr. He testified that Mr. Yan is the person
24 who offered them their jobs.  Transcript pages 116 to 117 and
25 209.  Finally, despite Mr. Yan's efforts to downplay his
                  SOUTHERN DISTRICT REPORTERS, P.C.
                         (212) 805-0300

271
E3LEZHOT                    Mr. Kung - summations
1   involvement in the restaurant, his power to exercise control
2   over the employees was evident throughout his testimony -- in
3   the language he used, for example, when speaking about whether
4   employees could be asked to work during their breaks, see
5   transcript at 167; were made to use the restaurant's sign-in
6   system, page 175; and his claim that what he stated in his
7   affidavit that he had told plaintiff about the restaurant's
8   intent to use tips to satisfy its pay requirements, even though
9   his mother actually uttered those words, that was because he
10  thought she was, quote/unquote, speaking for both of them.
11  Transcript page 164 to 165.  In short, I find that Bin Sheng
12  Yan was plaintiff's employer and is, therefore, jointly liable
13  for all FLSA and New York Labor Law violations.
14          For the reasons I have stated, defendants are jointly
15  liable to plaintiff in the amount of $134,704.79.  Under the
16  FLSA and New York Labor Law, plaintiff is entitled to
17  reasonable attorneys fees and costs as well.  I direct the
18  parties to confer in person with respect to the amount of fees
19  and costs that plaintiff is entitled to, with the hope that you
20  can either agree or at least narrow any disputes over an
21  application for fees and costs.  In the absence of agreement,
22  plaintiff shall file any application for such fees with
23  supporting documentation by April 21, 2014.  That is one month
24  from today.  Any opposition to the application must be filed by
25  May 5, 2014.  And any reply shall be filed by May 12, 2014.

272

E3LEZHOT                    Mr. Kung - summations

1           I have issued several opinions that address and touch
2   on the reasonableness of attorneys fees in this context.
3   Rather than cite them to you now, I think what I will do is
4   include them in the order in which I also include the tables
5   that I have incorporated by reference here today.  Suffice it
6   to say that I would encourage you to look at those opinions,
7   both before you confer, for purposes of helping in whatever
8   your negotiations are; and in the event that you cannot agree,
9   certainly before you make any applications, so that you make
10  sure that it is consistent with my prior rulings and that you
11  address the factors that I have discussed in those cases.
12          With that, I think I have concluded everything I need
13  to say.  We actually have copies of the order that I will be
14  entering with the tables and referencing those cases, in which
15  I also direct the Clerk of Court to enter a judgment consistent
16  with my ruling that I have just read into the record.
17          Is there anything else that we need to address,
18  Mr. Kung?
19          MR. KUNG:  Nothing else.  Thank you, your Honor.
20          THE COURT:  Mr. Tung?
21          MR. TUNG:  Nothing.
22          THE COURT:  All right.  In that case, we are
23  adjourned.  As I said, I will enter that order and direct the
24  clerk to enter judgment.  And in the event that there is any
25  dispute over attorneys fees, I obviously retain jurisdiction to

273

E3LEZHOT                    Mr. Kung - summations
1   adjudicate and resolve that dispute.
2                We are adjourned.   I wish everybody a very nice
3   weekend.   Thank you.
4                (Adjourned)
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

E3hezhot                    Yang - direct

1    receipts.  As far as cash, there would be records of a

2    15 percent.

3              THE COURT:  Please answer my question.  Who completed

4    this record?

5              THE WITNESS:  My son.

6              THE COURT:  And on what basis did you get the

7    information that you put into this record?

8              THE WITNESS:  From our computer.  Everything we had

9    was in our computer.

10             THE COURT:  And how often did you complete -- there

11   appears to be an entry for each day.  How often did you fill in

12   this form?

13             THE WITNESS:  How long did I fill this form, how often

14   did we do it?  Basically once a month.

15             THE COURT:  So once a month you would fill in all of

16   the information for each day in the previous month?

17             THE WITNESS:  No.  Before -- what I meant, the tips

18   they got either from credit cards or cash, they kept.  I didn't

19   touch them.

20             And basically I was the one who managed this

21   restaurant, even though I had given the restaurant to my son.

22   For whatever reason, he didn't want to manage it.  I was the

23   one who managed it.

24   BY MR. TUNG:

25   Q.  Ms. Yang, please answer the judge's questions.  The judge

1    wants to know who made the entries to this form.

2    A.  My son (English).

3    Q.  And how often did your son put those information into this

4    document?

5    A.  He prepared those records.  I think it would be best you

6    ask him later.

7            MR. TUNG:  I'll withdraw this until I call my other

8    witness.

9            THE COURT:  Very good.

10           Mr. Tung, if you're proceeding on to Exhibit S, I'm

11   not sure -- I do have it.

12           MR. TUNG:  Actually, I am only looking to introduce

13   one last page of S, the notice.

14   Q.  Ms. Yang, have you seen this document before?

15   A.  Yes.  I posted it on the wall of the restaurant.

16   Q.  Is this a copy that you made from the post on the wall of

17   the restaurant?

18   A.  Yes.

19   Q.  And who made this copy, and how --

20   A.  The accountant told us that we have to post this.  And we

21   were given not one copy; we were given several copies.  This

22   was one of the several copies given to us.

23   Q.  Ms. Yang, listen to my question.  Is this document in your

24   hand, is it an exact copy of the post that you had in the

25   restaurant?

1    A.  Yes.

2              MR. TUNG:  Your Honor, I would like to move Exhibit S

3    into evidence.

4              THE COURT:  Can you establish time frame, please.

5    Q.  Ms. Yang, could you tell us -- now, that's a copy of the

6    document you just stated from the wall.  Could you tell us when

7    you post this document, right, on the wall; from what time to

8    what time period?

9    A.  Since we opened our business in 2009.

10   Q.  So since 2009 you post this document on the wall?

11   A.  Yes.  We have to.

12   Q.  And it still remains there until at least the time of the

13   lawsuit?

14   A.  No.  No.  We replaced the copy from time to time, because

15   when sometimes we clean the restaurant, we damage the copy on

16   the wall.  We have to replace it with a new one.

17   Q.  And the new one is similar to this copy, or it's --

18   A.  Exactly the same.

19             MR. TUNG:  Your Honor, I forgot -- I think the rest of

20   them -- let me just ask her if she was aware of this document,

21   which is part of R -- part of S.  S.

22             THE COURT:  I thought you were only offering the last

23   page of S.

24             MR. TUNG:  That was the last page, but I think I just

25   ask her if she also post this.  If she did, I'll -- if it's

1   not --

2                    THE COURT:  All right.

3   BY MR. TUNG:

4   Q.  Ms. Yang, can you take a look at these two pages of

5   Exhibit S.  Have you seen these documents before?

6   A.  Yes.

7   Q.  And where did you see these documents?

8   A.  These two pages were given to me by our accountant.  It

9   stated that -- the minimum hour wages paid at that time I sold

10  it.

11  Q.  You didn't post these two pages on the wall of the

12  restaurant, did you?

13  A.  No.  I did not post these two pages on a wall in the

14  restaurant, but I did post another one.

15                   MR. TUNG:  Your Honor, I would like to move Exhibit S,

16  the last page only, into evidence.

17                   THE COURT:  Any objections, Mr. Kung?

18                   MR. KUNG:  No, your Honor.

19                   THE COURT:  Admitted.

20                   (Plaintiff's Exhibit S, last page, received in

21  evidence)

22  BY MR. TUNG:

23  Q.  Exhibit T.  Ms. Yang, can you take a look at these

24  documents which have been previously marked at Exhibit T, as in

25  Tom.  Have you seen these documents before?

E3hezhot                    Yang - cross

1              THE WITNESS:  Judge, I have a question.  Can I ask a

2       question?

3              THE COURT:  No.

4       Q.  Ms. Yang, did you testify earlier that this page is the

5       exact same page that you had at the restaurant at the time this

6       action was filed?

7              THE COURT:  Mr. Kung, I don't think that she has the

8       page you're referencing, and she may not remember what

9       Exhibit S is.

10             MR. KUNG:  I apologize, your Honor.

11             MR. TUNG:  Exhibit S.

12             MR. KUNG:  Your Honor, the last page is the only page

13      we admitted in Exhibit S.  So if the Court would like, I could

14      mark --

15             THE COURT:  Sure.

16      BY MR. KUNG:

17      Q.  Ms. Yang, please take a look at Exhibit S in front of you,

18      the one-page document.  Was this a document that you provided

19      to your attorney?

20      A.  This document was given to my attorney because he told me

21      that I didn't put it up.

22      Q.  Was this the exact posting that you are claiming that was

23      posted in the restaurant at the time -- excuse me, during

24      plaintiff's employment?

25      A.  Yes.

1   Q.  Ms. Yang, do you find any Chinese change on this page?

2   A.  No Chinese here, but they understood, because they

3   understood the number $7.25.  And I also told them it should

4   not be lower than $7.25 --

5   Q.  And you earlier --

6   A.     -- per hour.

7   Q.  Did you personally explain it to your employees?

8   A.  They all knew about it.  Right now, for instance, right now

9   it is $8.  I post it in my restaurant, and I tell them, the

10  minimum wage should not be lower than $8 an hour.

11  Q.  Ms. Yang, my question is:  Did you explain to your

12  employees regarding the information on this page?

13  A.  I told them.

14  Q.  What did you tell them?

15  A.  I told them this piece of paper stated right now the

16  minimum wage should not be lower than $7.25 an hour.

17  Q.  Did you ever explain this to the plaintiff?

18  A.  I did.

19          And he told me he was able to read English.  He say

20  that he was a learned person.  He was able to read on his own.

21  As a matter of fact, at the time when I told him, I pointed out

22  the number and he was laughing at my face.  I told him that I

23  could not read English on this page, and he say that he was

24  able to read.  As far as whether he was able actually to read,

25  I have no idea.

1       MR. KUNG:  Your Honor, I move to strike the second

2   portion of this testimony --

3       THE COURT:  Overruled.

4       MR. KUNG:  -- as nonresponsive.

5       THE COURT:  I take it that the plaintiff's first

6   language is Chinese, not English, is that correct?

7       THE WITNESS:  Yeah, Chinese.

8       THE COURT:  You may proceed.

9   BY MR. KUNG:

10  Q.  Ms. Yang, what else, if anything, did you tell plaintiff,

11  other than that the minimum wage is 7.25?

12  A.  I told him that they were paid also by tips.  His pay would

13  be $4.25, plus tips he received.

14  Q.  And is that how you paid plaintiff during his time of

15  employment?

16  A.  Yes.

17  Q.  So you paid plaintiff on an hourly rate of $4.25 per hour,

18  is that right?

19  A.  Of course, yes.

20  Q.  Was that for the entire duration of plaintiff's employment,

21  or did his hourly change at some time?

22  A.  Yes.  His pay would change.  In 2009 the restaurant

23  business was not good.  He had only worked three-and-a-half

24  days, and for two months he worked as a busboy.

25          I made him to work as a waiter starting from 2011,

1   same amount every month, or did it vary by month, depending on

2   how much you had worked?

3          THE WITNESS:  Depending -- basically same amount.

4   BY MR. KUNG:

5   Q.  Did you testify earlier that your pay changed a little bit

6   to your knowledge because your hours were somewhat different?

7   A.  No.  My hours -- it's the wage, minimum wage of the

8   government.  They raised a little bit.  My hours are the same.

9   Q.  And how did the raise of minimum wage change your pay,

10  change what you received from the restaurant?

11  A.  I don't understand.

12  Q.  You testified that in September 2013 you were paid $800 a

13  month, and you believe that was slightly different than what

14  you were paid in 2011.  So what were you paid in 2011, and what

15  was the difference?

16  A.  I'm sorry.  I told you I don't remember, but I think

17  there's a little bit raise by the regulations.

18  Q.  So the reason you believe your pay is different is only

19  because you believe that the law has changed, is that right?

20  A.  Well, they -- yes.

21  Q.  Who told you about this raise in minimum wage?

22  A.  Who?

23  Q.  Who?

24  A.  The restaurant.

25  Q.  Which restaurant?

1   A.   Lan Sheng.

2   Q.   And who specifically in Lan Sheng told you about this

3   raise?

4   A.   No one told me.  There's a paper on the wall.  Everybody

5   can see it.

6   Q.   On the paper what does it say -- withdrawn.

7        What did the paper say?

8   A.   I don't remember everything, but it's the kind of knowledge

9   for us as a waiter staff, you go to a restaurant, you see the

10  paper on the wall, that means like a per hour.  So I see the

11  number.  I didn't read through everything.  I don't remember

12  every specific thing.

13  Q.   You learned -- withdrawn?

14       THE COURT:  You indicated that there was some sort of

15  notice on the wall about the law regarding how much you needed

16  to be paid, is that right?

17       THE WITNESS:  Yes.

18       THE COURT:  Was that in English or Chinese or both?

19       THE WITNESS:  There was English and Spanish.

20       THE COURT:  And was that there both times you worked

21  in the restaurant?

22       THE WITNESS:  Yes.

23       THE COURT:  And can you tell me where it was posted?

24       THE WITNESS:  Well, in 2011, that was once you walk

25  in, once you walk in the restaurant, at the counter, I wasn't

```
1   on the right side.  It was right straight ahead.  You can see

2   it right away.  So it was kind of post on that wall.  Right now

3   they changed it, they like moved it, moved everything little

4   bit.  So they pushed it another place, so it's different

5   places.

6               THE COURT:  So where is it now?  Where was it when you

7   worked there most recently?

8               THE WITNESS:  There was -- well, like on the

9   left-hand, once you walk in, it's on the left-hand by the

10  computer, from the counter.

11              THE COURT:  And is it clearly visible to the people

12  who work there?

13              THE WITNESS:  Yeah.

14              THE COURT:  Okay.

15              THE WITNESS:  As I can see.

16  BY MR. KUNG:

17  Q.  So, Mr. Tang, you learned about the raise in wages from

18  4-something an hour to 5-something an hour from that posting;

19  is that your testimony?

20  A.  I'm sorry, not from the posting.  It's like everybody

21  knows.

22  Q.  Okay.

23  A.  Everybody knows like because we are waiter staff, like

24  everybody knows, like society.  You don't have to -- there's

25  nobody telling you anything.  Government, they don't give you
```

1    lessons.  We learn ourself.

2              THE COURT:  Was the notice posted in 2011 and the

3    notice posted most recently the same exact notice?

4              THE WITNESS:  Oh, no.  The number's changed.

5              THE COURT:  Okay.  "The number" being the number --

6              THE WITNESS:  Raised.

7              THE COURT:  The hourly wage?

8              THE WITNESS:  Yes.

9    BY MR. KUNG:

10   Q.  So you did not learn about the 4-something dollar an hour

11   and 5-something dollar an hour from that poster, is that right?

12   A.  I don't know like -- I learned something from there.  I

13   mean, that's to prove that that's -- that's a law.  I mean, you

14   learn from the law and poster in front of you -- I don't

15   understand.  Sorry.

16   Q.  Allow me to clarify.  Mr. Tang, my original question was to

17   you, who -- or how you came to learn that the law regarding

18   wages was raised from 4-something an hour to $5 an hour,

19   according to your testimony.  Initially you told us that you

20   learned it from the posting, and now you're saying you did not.

21   So I'm just trying to clarify your testimony.

22              Did you or did you not learn about this raise in

23   minimum wage from the poster?

24   A.  I don't learn.  I -- okay.  I see the post.  I know what I

25   get.  That's it.  Once I see the post, I know how much I

1   supposed to have per hour.

2   Q.   Which is what?

3   A.   Which is -- back in the days, like 4-something, but now it

4   should be $5 with the tips.

5        THE COURT:   And that was the number you saw on that

6   notice, was 4-something and 5-something?

7        THE WITNESS:   Yeah, that's -- no, because

8   4-something -- the poster was 7-something, because I know this

9   is for the employee, the regular employee, but -- for the

10  waiter staff, since we have the tips.   That's why it's

11  4-something.

12       THE COURT:   And who told you that the tips could count

13  toward the 7-something?

14       THE WITNESS:   No, nobody.   Because it saves something

15  for the regular, because we get paid with the tips.   So we

16  don't get 7-something per hour, like the minimum wage.   It says

17  minimum wage.

18       THE COURT:   I understand.   My question is:   Did anyone

19  at the restaurant tell you that your hourly wage included the

20  tips that you received?

21       Let me ask it this way:   On the notice you saw that

22  the minimum wage was $7-and-something per hour, correct?

23       THE WITNESS:   Yes.

24       THE COURT:   And your base pay was not $7-and-something

25  per hour; it was less than that, correct?

E3iezhot                     Yan - cross

1   Q.  Mr. Yan, what's your relationship to Lan Sheng Restaurant?

2   A.  The hundred percent owner.

3   Q.  Do you also work at the restaurant?

4   A.  Not -- yeah, sometimes.  Not most of the time.

5   Q.  About how many days a week?

6   A.  It varies.

7   Q.  Approximately, can you give me an average?

8   A.  I don't have a schedule, a set schedule.

9   Q.  You don't have a schedule.  Do you just come and go as you

10  please?

11  A.  Yeah.

12  Q.  Do you receive the salary from Lan Sheng Restaurant?

13  A.  Yes.

14  Q.  Can you tell me how much -- can you tell us how much?

15  A.  It was 2,500 a month.

16  Q.  And who decided this $2,500 amount?

17  A.  I did.

18  Q.  What's your job title at -- withdrawn.

19        Do you have a job title at Lan Sheng Restaurant?

20  A.  Not really.  Everybody know my mom is the boss.

21  Q.  Have you ever referred to yourself as the manager?

22  A.  Sometimes.

23  Q.  Would you say that you are the manager?

24  A.  No.  I only answer the phone calls as the manager, because

25  my mom doesn't speak English very well.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1    in April 2011, or was there some point between then and now

2    that that practice started?

3          THE WITNESS:  Let me think.  When we started to have

4    that book, I don't remember exactly when.  But anyway, after I

5    started to work for this restaurant, I had this book.

6          THE COURT:  But when you started in the restaurant,

7    there was no practice of recording the amount that you got in

8    tips, is that right?  That started at some point after you

9    started at the restaurant?

10         THE WITNESS:  On this book it listed the time it

11    started, but I just don't remember when it started.

12         THE COURT:  But when you started working at the

13    restaurant, do you remember recording how much you took in tips

14    at that time, or had that practice started later?

15         THE WITNESS:  Before, no.  There was no such practice.

16    After I came in, yes.  I just don't remember when the practice

17    started.

18         THE COURT:  Okay.  And did anyone tell you anything

19    about the tips that you would collect, how they counted toward

20    your wages?

21         THE WITNESS:  Our way is to divide tips equally.  As

22    long as you work that day, you have right to have a share.

23         THE COURT:  Are you familiar with something called the

24    minimum wage?

25         THE WITNESS:  Yes.

1          THE COURT:  What is your understanding of the minimum
2    wage?

3          THE WITNESS:  In our restaurant we posted a piece of
4    paper.  On the paper it lists the minimum hourly wage.

5          THE COURT:  And what is your understanding of what
6    that is?

7          THE WITNESS:  It means the minimum wage we receive.

8          THE COURT:  Now, was that notice posted in the
9    restaurant for the entire time that you had worked there?

10         THE WITNESS:  Yes.

11         THE COURT:  What language or languages was it in?

12         THE WITNESS:  English.

13         THE COURT:  And did either Bin Sheng Yan or Lan Yang
14   tell you anything about the minimum wage?

15         THE WITNESS:  We don't need them to tell us.  We
16   waiters take a look at the poster.  We know.  And also, we
17   discussed about it among us.

18         THE COURT:  And did either of them, Bin Sheng Yan or
19   Lan Yang, ever tell you about what role the tips played in
20   connection with the minimum wage?

21         THE WITNESS:  No.

22         THE COURT:  And do you know whether the plaintiff
23   speaks English or not?

24         THE WITNESS:  What is a plaintiff?

25         THE COURT:  I'm sorry.  Do you know Mr. Zhou, sitting

## Summary of Minimum Wage Changes Contained
## in the New Part 146 Covering the Restaurant and Hotel Industries Now Combined
## in the Hospitality Wage Order
### Effective January 1, 2011

**IMPLEMENTATION PERIOD.** Employers will be allowed a period of time from January 1, 2011 through February 28, 2011 in which to make the necessary changes in payroll systems and bookkeeping operations resulting from these new rules. As of March 1, 2011 or their next regularly scheduled payday following March 1, 2011, employers must pay all covered employees any additional wages owed on account of the new rules, **computed retroactively to January 1, 2011**. Employers must maintain payroll records that clearly identify the retroactive payments and must post in their workplaces, in a location frequented by employees, a notice discussing this implementation period and the employees' entitlement to retroactive wages. NOTE: Employers who are able to implement the wage increases prior to March 1, 2011 are encouraged to do so.

**ELEMENTS UNCHANGED IN THE REGULATIONS:** The minimum hourly rate stays at $7.25 per hour. Overtime pay is still 1½ times the regular rate after 40 hours.

**MINIMUM HOURLY RATES FOR TIPPED EMPLOYEES CHANGE AS FOLLOWS:**

FOOD SERVICE WORKERS
    As of January 1, 2011:    $5.00 min wage/$2.25 max tip credit/total at least $7.25
    Prior to January 1, 2011: $4.65 min wage/$2.60 max tip credit/total at least $7.25

SERVICE EMPLOYEES IN ALL ESTABLISHMENTS
    As of January 1, 2011:    $5.65 min wage/$1.60 max tip credit/total at least $7.25
    Prior to January 1, 2011: $5.65 min wage/$1.60 max tip credit, and
                        $4.90 min wage /$2.35 max tip credit

SERVICE EMPLOYEES IN RESORT HOTELS IF TIPS AT LEAST $4.10/HR
    As of January 1, 2011:    $4.90 min wage/$2.35 max tip credit
    Prior to January 1, 2011: $4.35 min wage/$2.90 max tip credit

CHAMBERMAIDS IN RESORT HOTELS
    As of January 1, 2011:    merge into service employees in resort hotels
    Prior to January 1, 2011: $6.15 min wage/$1.10 max tip credit/if tips between $1.10-$4.10/hr, and
                        $4.90 min wage/$2.35 max tip credit/if tips more than $4.10/hr.

**HOURLY RATES OF PAY ARE REQUIRED FOR ALL NON-EXEMPT EMPLOYEES (EXCEPT COMMISSIONED SALESPERSONS).** No longer are salaries, weekly rates, day rates, or piece rates allowed. This is intended to deter excessively long hours and to produce greater compliance with the overtime pay requirements of the law.



DEFENDANT'S
EXHIBIT
C
1-7-14 VC

**OVERTIME PAY FOR ALL NON-EXEMPT, NON-RESIDENTIAL AND RESIDENTIAL EMPLOYEES** is due after 40 hours in a week. No longer is the rule after 44 hours for any residential employees.

**SPREAD OF HOURS, CALL-IN, AND UNIFORM MAINTENANCE PAY** is due to all non-exempt employees at any pay rate, not just to those paid at or very near the minimum wage. These extra payments no longer "phase out" as wage rates rise.

**WASH-AND-WEAR UNIFORMS** are exempt from the requirement to pay uniform maintenance pay to the worker. To qualify for the exemption, the number of uniforms provided to the employee must be consistent with the average number of days per week worked by the employee, and the uniform garments must be able to be laundered routinely along with personal clothing.

**GRATUITIES ARE SUBJECT TO REGULATIONS FOR THE FIRST TIME IN NEW YORK STATE.** The new wage order contains regulations fleshing out the law forbidding tip appropriation by employers or their agents. The sharing and pooling of tips among employees, both voluntary and employer-mandated, is allowed. Employers must give written notice to employees of the tip policies of the establishment. If the employer mandates tip sharing or tip pooling, or adds charges to customer bills for tips, the employer must keep records of the tips received and distributed. Employees must be allowed to view these records. If a gratuity is paid by credit card, employers are allowed to charge employees the same percentage that the credit card company charges the employer for processing the gratuity. Employers are required to distribute in full to service employees any house-imposed charges on guest bills that are purported to be gratuities. A charge for the administration of a banquet, special function, or package deal shall be clearly identified as such, and customers shall be notified that the charge is not a gratuity or tip. The employer has the burden of demonstrating, by clear and convincing evidence, that the notification was sufficient to ensure that a reasonable customer would understand that such charge was not purported to be a gratuity. Adequate notification shall include a statement in the contract or agreement with the customer, and on any menu and bill listing prices, that the administrative charge is for administration of the banquet, special function, or package deal, is not purported to be a gratuity, and will not be distributed as gratuities to the employees who provided service to the guests. The statements shall use ordinary language readily understood and shall appear in a font size similar to surrounding text, but no smaller than a 12-point font. A combination charge, part of which is for the administration of a banquet, special function or package deal and part of which is to be distributed as gratuities to the employees who provided service to the guests, must be broken down into specific percentages or portions, in writing to the customer, in accordance with the standards for adequate notification as stated above. The portion of the combination charge which will not be distributed as gratuities to the employees who provided service to the guests shall also be subject to the above requirements.

**EMPLOYEE MEALS.** Whenever the shift is long enough to invoke the meal period law, employers must either allow employees to bring their own food or give them a meal at no more than the meal credit amount in the wage order ($2.50 per meal).



Post Conspicuously
New York State Department of Labor

# ATTENTION EMPLOYEES
## (ATENCIÓN EMPLEADOS)
## MINIMUM WAGE INFORMATION
### (INFORMACIÓN SOBRE EL SALARIO MÍNIMO)

| **Effective 07/24/09** | **A partir del 07/24/09** |
|---|---|
| Basic Hourly Rate | Salario Mínimo |
| **$7.25** per hour | **$7.25** por hora |

**Overtime Rate**
For most occupations, employees must be paid overtime after 40 hours of w o r k in a w eek at 1 ½ times their hour ly r ate of pay. For residential employees, the overtime rate applies after 44 hours.

**Tips**
A specified tip allowance may be credited toward the minimum wage for tips earned.

**Meals and Lodging**
A specific credit may be granted toward the minimum wage for meals and/or lodging provided by the employer.

**Federal Law**
Employees covered under the federal Fair Labor Standards Act must be paid in accordance with State law and also in accordance with higher federal requirements, where applicable.

**Other Wage Requirements**
A specific amount must be paid, in addition to the minimum wage, for the maintenance of required uniforms.

There are provisions for other supplemental wages in New York State Industry wage orders. These may include a part-time rate, daily call-in pay and a rate for split shift or spread of hours. Whether a par ticular supplemental wage applies depends on the provisions of the industry wage order covering the employment.

**For additional Information or to file a complaint**
Write or call the Department of Labor, Division of Labor Standards at one of the offices listed below:

**Pago por horas extras**
En la mayoría de puestos laborales, los empleado deben recibir una paga de tiempo y medio de la tarifa regular por hora cuando las horas trabajadas exceden las 40 horas semanales. Los empleados que residen en el sitio de trabajo, deben recibir una paga de tiempo y medio de su tarifa regular por hora en exceso de 44 horas semanales.

**Propinas**
Se puede acreditar al salario mínimo una cantidad específica por las propinas ganadas.

**Comidas y Alojamiento**
Se puede acreditar una cantidad específica al salario mínimo por comidas y/o alojamiento provistos por el patrono.

**Ley Federal**
Los empleados protegidos por la Ley Federal de Normas Equitativas del Trabajo (Federal Fair Labor Standards Act) deben ganar salarios según lo estipulan las leyes estatales y en conjun toton los requisitos superiores federales, según n convenga.

**Otros requisitos salariales**
Se debe pagar una cantidad específica, además del salario mínimo, por el mantenimiento de uniformes obligatorios.

Existen otras disposiciones sobre pagos suplementarios en las ordenanzas industriales del Estado de Nueva York. Dichas disposiciones contienen una tarifa por trabajo a medio tiempo, trabajo diario casual, turnos divididos o por horas repartidas. Si un pago suplementario es pertinente o no, depende de las disposiciones regentes en el tipo de industria vinculada al trabajo en desempeo.

**Si necesita más informaci n o si quiere presentar una queja por favor escriba ol llame al**
Departamento del Trabajo Divisi n de Normas Laborales a cualquiera de las oficinas siguiente:

**State Office Building Campus**
Albany, NY 12240
(518) 457-2730

**44 Hawley Street**
Binghamton, NY 13901
(607) 721-8014

**65 Court Street**
Buffalo, NY 14202
(716) 847-7141

**400 Oak Street**
Garden City, NY 11530
(516) 794-8195

**75 Varick Street, 7th Floor**
New York, NY 10013
(212) 775-3880

**109 S. Union Street**
Rochester, NY 14607
(585) 258-4550
(Subdistrict)

**333 E. Washington Street**
Syracuse, NY 13202
(315) 428-4057

**120 Bloomingdale Road**
White Plains, NY 10605
(914) 997-9521

**For additional information:**
www.labor.ny.gov

The New York State Department of Labor is an Equal Opportunity Employer/Program. Auxiliary aids and services are available upon request to individuals with disabilities. Este empleador participa en el Programa de Igualdad de Oportunidades. Servicios adicionales para personas incapacitadas e instrumentos para ayudarlas estan disponibles a solicitud de dichas personas.
LS-207 (06/09)